PINNEY *vs.* GLEASON.

The *measure of damages* in an action for the non-payment of a note in this form, " For value received, I promise to pay A. B. $79,50 on, &c. *in salt at fourteen shillings per barrel,*" is the *sum* specified in the note, and not the value of the *salt* on the day specified for payment.

ERROR from the supreme court. Pinney sued Gleason in the Onondaga C. P. in an action of assumpsit, and declared upon three notes; the first was in the following form : "For value received, I promise to pay John Pinney seventy nine dollars and fifty cents, on the first day of August, 1822, in salt, at fourteen shillings per barrel, in good boating order. Liverpool June 30, 1820." (Signed) Ara Gleason. The second note was in the same form, the same sum being specified, payable in August, 1823 ; and the third was also in the same form, the sum specified being ten dollars, payable in August, 1822. The defendant pleaded *non assumpsit,* and the cause was tried in the common pleas in May, 1824. The jury found a *special verdict,* setting forth the making of the notes declared on, and sundry payments and set offs

proved by the defendant; and stating that they had assessed the damages on the notes declared on *upon the principle that they (the jury) were to be governed by the number of dollars and cents specified in the notes, and not by the fair cash value of salt per barrel at the time when the notes became due.* They also found that the notes declared on were made and given in part consideration of the transfer of the interest of the *payee* in a house and lot of land sold by him to the *maker*, and prayed the advice of the court: if the court approved the principle upon which they had assessed the damages, then they found a verdict for the *plaintiff*, for $87,60, otherwise, they found for the defendant. The common pleas gave judgment for the plaintiff. The defendant removed the record into the *supreme court* by a writ of error, where the judgment of the common pleas was *reversed* and a *venire de novo* awarded, 5 *Cowen*, 152, 411; upon which the plaintiff sued out his writ of error to this court.

The following opinions were pronounced in the supreme court:

By Mr. Justice WOODWORTH. The salt not having been delivered, the question is, what damages is the plaintiff entitled to recover? It appears to me that this is to be considered a contract for the delivery of salt. Had the defendant made the delivery in season, it is evident that 45 barrels and $\frac{6}{14}$ of a barrel would have satisfied the contract; because, calculating the salt at fourteen shillings, it would have been equal to $79,50, the sum mentioned in the note. It is equally clear, that if, at the time of delivery, the value of salt had been only a dollar, or any less sum per barrel, the same quantity would have discharged the note. If this proposition be correct, I think it follows that the $79,50, specified in the contract, was never contemplated as a measure of damages, but merely to designate the quantity necessary to be delivered at the price stipulated. If the defendant was indebted to the plaintiff $79,50, the plaintiff elected to take salt at a given price, instead of requiring the payment of a sum certain. He took his chance of the market. If the salt had risen in value, the plaintiff would have reaped the benefit. Unless

this be the fair construction, the insertion of fourteen shillings per barrel was useless; it points out, however, the intention of the parties too clearly to be rejected as surplusage. I am, therefore, of opinion, that the value of the salt was the proper measure of damages. The court below having adopted a different rule, the judgment must be reversed.

Mr. Justice SUTHERLAND concurred.

By the CHIEF JUSTICE. The court of common pleas adopted the true measure of damages. The defendant below acknowledged by his several notes the amount of the debt due in dollars and cents. The delivery of the salt was the mere mode of payment, and the defendant might have avoided the payment of the whole sum by such delivery; but not having done so, he should not be discharged by paying less than the debt which he has agreed to be due. This precise question was very fully considered in *Brooks* v. *Hubbard*, 3 *Conn. R.* 58, and the rule acted upon in this case holden to be the correct one. The same rule was recognized by this court in *Smith* v. *Smith*, 2 *Johns. R.* 235. I am of opinion the judgment ought to be affirmed.

The cause was argued here, by

*I. Hamilton*, for the plaintiff in error.

*J. A. Spencer*, for the defendant in error.

The following opinions were delivered on the final decision of the case:

By the CHANCELLOR. Without expressing any opinion as to the correctness of the principle adopted in *Clark* v. *Pinney*, 7 *Cowen*, 681, as a general rule of damages on a contract for the delivery of specific articles, on a consideration *paid in advance*, it may be sufficient to say the principle was wrongly applied to that case if the plaintiff in error is correct in his apprehension of the law in the case now before us. The particular terms of the contracts are the same in both; and the only difference in the cases is, that in one the salt was worth *more*, and in the other *less*, than the price specifi-

ed in the note.   The same principle therefore is applicable to each.

Contracts in this particular form are very common in some parts of the country, especially in Vermont, and the other eastern states.   I have not been able to find any adjudged case on the question now before us, either in the English reports or in those of this state.   The question has arisen in the adjoining states of *Connecticut* and *Pennsylvania*, and conflicting decisions have been made.   In *Meason* v. *Phillips, Addis. Rep.* 346, the question came before the court in the fifth circuit in Pennsylvania, on a lease of lands, at a stipulated rent, payable in grain at certain specified prices per bushel ; and it was decided that the damages for a breach of the contract must be ascertained by valuing the grain at the current market price at the time when the rent was payable. A similar question came before the supreme court of that state a few years since, on a contract to pay $1900 in certain specified payments of money and whiskey, and a similar rule of damages was adopted.   *Edgar* v. *Bois,* 11 *Serg. & Raw.* 445.   Gibson, justice, who delivered the opinion of the court in this last case, pronounces the decision in *Meason* v. *Phillips,* to be in all respects sound law.   In *Brooks* v. *Hubbard,* before the supreme court in Connecticut, 3 *Conn. Rep.* 58, the contract was to pay a certain specified sum at a fixed period, in cotton shirting at 30 cents per yard ; and it was there held that the amount specified in the note, and not the actual value of the shirting at the time fixed for payment, must determine the quantum of damages.

The law being thus unsettled, and the justices of the supreme court of our own state differing as to the correct criterion of damages in such cases, it becomes necessary for this court to examine the question with attention ; and to endeavor to settle it agreeable to the principles of practical common sense.

The question is not without difficulties on either side, and the true way to decide it is, if possible, to ascertain the real intent and understanding of the parties to the contract.   If that understanding and intent was that the defendant should deliver a certain fixed number of barrels of salt at all events,

then the decision of the supreme court was correct, and they have adopted a rule which affords the plaintiff a fair equivalent for the loss he has sustained by the breach of the contract; but if the intention was to give the defendant the privilege of paying the $79,50 in money or salt at his election, and the rate at which the salt might be delivered was only introduced to prevent dispute as to the price in case he chose to avail himself of the privilege of paying in the specific article, then the payment of the principal debt and interest must afford the rule of damages, the defendant having neglected to avail himself of the privilege of paying in the specific article.

*Pothier* says these agreements for paying any thing else in lieu of what is due, are always presumed to be made in favor of the debtor, and therefore he has always a right to pay the thing which is actually due, and the creditor cannot demand any thing else; and he puts the case of a lease of a vineyard at a fixed rent, expressed in the usual terms of commercial currency, but payable in wine. In such a case he says the lessee is not obliged to deliver the wine, but may pay the rent in money. 2 *Ev. Poth.* 347, *No.* 497. *Chipman,* in his valuable treatise, on the law of contracts for the delivery of specific articles, puts the case of a note for $100, payable in wheat, at 75 cents per bushel, and concludes that it comes within the principle referred to by *Pothier,* and that the debtor may pay the $100 in money, *or* in wheat at the price specified. He says the nature of the contract is this: The creditor agreed to receive wheat instead of money, and as the parties concluded the price of wheat at the time of payment would be 75 cents per bushel, to avoid disputes about the price, they fixed it at 75 cents in the contract. If at the time fixed for payment wheat be at fifty cents a bushel, the debtor may pay it in wheat at the rate of 75 cents. That if the parties had intended the risk in the rise and fall of the wheat should be equal with both, the contract would have been simply for the payment of a certain number of bushels. *Chip. on Con.* 35.

This construction of the contract appears to be rational, and is probably in accordance with the practice of those parts of the country where these contracts are most frequently made

The language is certainly not the best which could be used to express such an intent; and probably if the contract was drawn by a lawyer he would put it in the alternative, giving the debtor the option in express terms, to pay the debt in money, or in wheat at the fixed rate per bushel. But certainly if the intention of the parties was that a certain number of bushels of wheat should be absolutely delivered in payment, a lawyer would draw the note for so many bushels of wheat in direct terms.

It is also to be observed that the act of 1797, 3 *vol. Greenleaf's ed.* 358, which authorized the clerk to assess damages on " contracts for the delivery of specific articles, at a value or price stipulated in the contract," and which provision has been continued in all the subsequent revisions of the laws, seems to embrace cases of this description only. If so, it may be considered a legislative declaration that the damages on such contracts are to be considered as fixed and certain; and that the amount to be recovered is a matter of mere *computation.*

On the whole I am inclined to concur in *Chipman's* construction of these contracts; and consequently to adopt the rule of damages laid down by the Chief Justice in the court below. If this should be the opinion of this court, the judgment of the supreme court must be reversed, and that of the common pleas affirmed.

By Mr. Senator ALLEN. The court below have considered the notes alluded to, as " a contract for the delivery of salt," and that the value of the salt was the proper measure of damage; " that the $79,50 specified in the contract was never contemplated as a measure of damages, but merely to designate the quantity necessary to be delivered at the price stipulated." The evidence before the jury, however, was that Pinney transferred to Gleason all his interest in a certain house and lot in the village of Liverpool, and that the consideration of the transfer was $412,50, for which Gleason gave several notes or memorandums, among which were the notes in question. It would seem, therefore, that the amount in money was the measure by which the debt was to be ascertained, and not the quantity of salt. If there was, in no

NEW-YORK,
Sept. 1830.

Pinney
v.
Gleason.

event, an obligation to pay the sum designated, in money, as the supreme court appear to have decided, why was the sum of $79,50 inserted? Had the agreement been for the delivery of salt only, such number of barrels as would have satisfied the debt would have been mentioned, and not the sum of $79,50.

Admitting that the note in question was a contract for the delivery of salt, on a particular day and at a stipulated price, the question is, may a contractor neglect or refuse a fulfilment of his promise with impunity? Gleason promises to pay Pinney $79,50, on the 1st of August, 1822, in salt, at 14 shillings per barrel; but he neglects or refuses to deliver the salt at the time mentioned in the contract, although it appears from the case, salt might have been procured at less than 14 shillings per barrel on the first of August, 1822.

In the case of *Baker* v. *Mair*, 12 *Mass. Rep.* 121, it was held, that if a person contract to do a specific thing within a certain time after notice, he will be liable for the value in money, unless he do the thing or be ready to do it at the expiration of the time. This appears a case in point; for the defendant contracted to do a specific thing, namely, the delivery of salt at a certain time, in lieu of $79,50 in money. He does not perform, however, nor was he ready to do it at the time stipulated; and consequently he was, in accordance with the above decision, liable for the $79,50 in money.

The opinion of the supreme court upon which they have founded their decision is, that the value of salt on the 1st of August, 1822, was the only measure of damage which could be sustained by the plaintiff. This, according to any view of the matter, cannot be correct. Suppose the plaintiff had contracted with another for the sale of this salt, deliverable on the day he was to receive it from the defendant, but by the neglect or refusal of the defendant to deliver it as promised, he not only lost the sale of the salt, but perhaps incurred a forfeiture in addition; can it be just or equitable that the plaintiff shall be compelled to sustain such an injury through the wilful neglect of the defendant?

To my view it appears perfectly reasonable, that if a person contracts to perform a certain act at a given time, whether in lieu of the payment of a debt or for a specific consideration, if he neglects to perform at the time agreed on, the contract ought to be void, unless some particular ground of equity exists on his behalf to excuse and relieve against the breach of contract. None has been shewn to exist in this case. I am of opinion that there is error in the decision of the supreme court, and that their judgment ought to be reversed.

By Mr. Senator BEARDSLEY. Without relying on the finding of the jury by special verdict, that the note in question was given with others for the price agreed to be paid for a house and lot, I think this judgment must be reversed. The note or memorandum was given for $79,50, payable in salt at fourteen shillings per barrel, and is at least *prima facie* evidence that Gleason had received that amount or the value thereof. *Brooks* v. *Hubbard, 3 Conn. R. 58, 60.* Money is the natural standard of value, and the amount in dollars and cents expressed in the note should not be rejected for a more uncertain standard. The note is for a sum of money payable in salt at fourteen shillings per barrel, and was payable in salt for the benefit of the maker, because a note payable in specific chattels is considered of less value than a note payable in cash. *Chipman on Contracts, 35.* The giving of notes of this kind is of daily occurrence throughout the country, and among farmers, manufacturers, lumber men and those engaged in barter, the received opinion is, that if not paid as specified, the amount of the note must be paid in cash. If not so intended at the giving of the note, it would be given for so many barrels of salt. *Chipman on Contracts, 36.*

Notes are frequently given for a sum certain, payable in chattels at the appraisal of men, sometimes at the cash value of the article, and sometimes, as in the present case, at a price agreed upon by the parties. The object in fixing the price is to prevent dispute in regard to the value, and it will hardly be contended, that if the present note had been given

for $79,50, payable in salt at the appraisal of men, that the sum specified should be rejected as the standard. Why then, when the parties to prevent dispute have agreed upon the value, shall it be rejected?

It was admitted on the argument, that if judgment had been taken by default, the clerk would have been bound to assess the damages at the sum specified in the note. 1 *R. L.* 522. This is undoubtedly correct, and if so, I can see no good reason for adopting a different rule of damages because assessed by a jury. The supreme court in this cause and in *Pinney* v. *Clark*, 7 *Cowen*, 681, consider these notes as contracts merely for the delivery of salt. They are not that class of contracts, but are for a sum certain payable in salt. The maker may discharge the note by paying in salt, but if he fails, the amount must be paid in money, and the standard of value is the sum agreed upon by the parties. This renders the contract and amount certain, and there is no necessity of evidence *aliunde* the instrument to ascertain the damages.

It is said that this construction is unequal in its operation; that it gives the maker the privilege of paying in chattels, but takes from the payee the right of enforcing a specific performance in case the article should increase in value. The answer is, that the parties intended to secure this advantage to the maker, otherwise they would have excluded the dollars and cents, and given the note for so many barrels of salt. The right of paying in salt was for the *maker's benefit*, *Chipman*, 35, 1 *Poth. on Obl.* 347, *No.* 497, and if the payee receives the amount specified in the note he receives what the maker was to pay for the property; and it was not contemplated that he should secure to himself not only the price, but a speculation on the salt in case it should increase in value, unless the maker should elect to pay in salt. But I have no doubt that such a note may be discharged by tendering the amount in cash instead of the specific chattel.

If this was a case where the maker had agreed to pay a certain quantity of salt, without inserting an amount in the note, or where he had agreed that upon the payee's performing a certain act or condition, he would pay a given quanti-

ty, then the reasoning of the two justices of the supreme court who have decided this cause might be applicable. They have considered the note in this cause, and in *Pinney* v. *Clark,* as given for the delivery of a quantity of salt rejecting the amount specified in the note; and in support of their opinions, have cited and gone into an examination of cases in relation to contracts for the delivery of stocks and specific chattels merely.

I shall refrain from a review of those authorities, because I consider this a different contract, and of course those authorities not applicable; but to test the rule of the supreme court, let us suppose the salt to have been worth $5 per barrel, (a price at which it has sometimes sold,) will it be contended that the plaintiff could recover damages at that rate? more than $227, on a contract of $79,50? And yet, if that rule is correct, he would be entitled to such a recovery; because, if you go into the inquiry as to the value of the article for one party, you must for the other; and it is easy to imagine a case under this rule of damages that would be destruction to the maker of the note.

The above view of the case, although to my mind perfectly clear in principle, may also be supported by authority, as will be found upon a slight examination of cases.

In *Smith* v. *Smith,* 2 *Johns. R.* 243, a note was given for £40, payable in land at 9s. per acre. The court held the note evidence of money had and received, coupled with an acknowledgment that it was an honest debt, and £40 and interest the measure of damages. In *Brooks* v. *Hubbard,* 3 *Conn. R.* 58, the note was for $250, payable in cotton shirting at 30 cents per yard; the court, after argument, unanimously decided that $250 with interest should be recovered. Chief Justice Hosmer in that case says: "The contract in question is one of the most common forms of engagement among manufacturers and their workmen; and from their frequency, their meaning is perfectly intelligible. The promise to pay $250 necessarily implies an indebtedness to that amount; the residue of the note has no bearing on this point, and relates exclusively to the mode of payment." Again: "Expunge the $250, or what is virtually the same thing, de-

cide that it is not the real amount of the debt or liquidated damages, and the note contains no criterion by which the number of yards can be estimated."

The same principle is recognized in *Chipman on Contracts, p.* 35, and *Pothier on Obligations,* 1st *vol. p.* 347, *No.* 497, and with the opinion of Chief Justice Savage in this cause, furnish a preponderance of authority not to be resisted, and amply sustaining the view now taken of the cause. The judgment must be reversed.

By Mr. Senator BENTON. The only question presented in this case for the consideration of the court is whether the amount of money expressed in the note, or the value of the salt at the time the note fell due, is the proper measure of damages.

The maker of the note has fixed the amount of his indebtedness in dollars and cents, and this no doubt was the actual sum due to the payee; and the delivery of the salt was the mere mode of payment of which Gleason might have availed himself, had he been so disposed, even if the salt at the time the note became due had been selling in market for a sum much less than the price stipulated between the parties. This, I apprehend, is a contract for the payment of a sum of money certain in amount, in a specific article, at a fixed price; and upon looking into the record, it will be seen that a consideration passing from Pinney to Gleason for this note with others is duly proved. The jury, in the special verdict, have found this fact. Hence the objection cannot arise that this note not being negotiable within the statute, no consideration passed upon giving it. This consideration clearly shows the *intent* of the parties; nor is it, I think, necessary to reject any part of the instrument as surplusage. The price per barrel fixed upon the salt by the parties was such as was perfectly satisfactory, as much so probably as if any other or the market price had been named. If this note had been payable in salt at the market price, put up in barrels in good boating order, upon the non-delivery of the specific article at the day, what would have been the measure of damages? Most clearly the stipulated amount mentioned in the instru-

ment. The substance of this contract appears to me to be this : G. promises to deliver P., on a day certain, so many barrels of salt, at 14 shillings per barrel, as would amount to the sum of $79,50, or in default of this he engages to pay him this latter sum in cash.

I am of opinion that the judgment of the *supreme court* should be reversed with costs, and the judgment of the common pleas affirmed.

This being the unanimous opinion of the court, the judgment of the supreme court was thereupon *reversed.**

* The supreme court of *Tennessee*, on a question arising on a similar contract, held, in accordance with the opinion of the majority of the judges of the supreme court of this state, that the *value of the article* at the time when the contract was to be performed, and not the *sum* specified in the contract, was the measure of damages. *McDonald* v. *Hodge, 5 Haywood's Tenn. R. 85.*