Denison *v.* Tyson.

➻➻●◉●◄◄◄

ADNA C. DENISON *v.* ISAAC TYSON, JR.

A contract in the form of a promissory note, payable in specific articles, is treated, in this State, as a promissory note, both as to the form of declaring upon it, and as to the necessity of giving evidence as to the consideration, in the first instance, on the part of the plaintiff.

An agent, employed for the purpose of superintending the sale of stoves and hollow ware for his principal in a given section of country, and who is authorized to receive payment therefor in different articles of the produce of the country, is not authorized to execute a note, payable in such wares at a future day, and thus bind his principal by his acknowledgement of " value received."

In order to recover upon such a contract, executed by the agent, without any express authority from his principal, the contract must be declared upon specially, and the plaintiff must prove that the consideration of the note came fairly within the scope of the agent's authority, or that it came to the use of the principal.

The supreme court will not reverse a judgment *pro forma,* and remand the case to the county court, in order to enable the plaintiff to move to amend his declaration,—especially when the plaintiff had once declined taking such a course, when, in the course of the trial in the court below, it was suggested by the court as being necessary to a recovery.

ASSUMPSIT upon a contract in writing in these words ;—"Sutton, 'March 4, 1842. For value received I promise to pay Adna C. 'Denison, or order, fifty dollars, to be paid in stoves, or hollow 'ware, as he may choose, delivered at the Tyson Furnace depot 'at Newbury, Vermont, at their wholesale prices, on demand. '(Signed) E. K. West, Agent for Tyson Furnace, at Newbury Vt." Plea, the general issue, and trial by jury.

On trial the plaintiff gave evidence tending to prove the execution of the contract by West, that the Tyson Furnace was owned by the defendant, and that, at the date of the note in suit, Augustus Haven was the general agent of the defendant in carrying on the furnace business,—the principal centre of which was at Plymouth, Vermont; that said Haven employed West as a sub-agent, for the purpose of making sales of stoves and hollow ware in the northeastern portion of the state,—the principal depot of wares under his control being at Newbury; that West was authorized to sell either for cash, or other pay, or for credit, in his discretion, but was specially instructed not to give notes,—and there was no evidence that he had ever done so with the knowledge of the defendant, or of Haven; that in one instance, when West had given a note similar in form to the one now in suit, and had received pay for the ware promised in the note, payment of the note was at first refused, but, on inquiry of the agent, and after some delay, it was finally paid ; that after West left the concern,—which was in the fall of 1842,—the defendant himself was sometimes in the state, although he resided in the city of Baltimore ; that while here, on one or two occasions, he spoke of West as being one of his most efficient agents, and a witness testified that he once heard Haven say, after West left the defendant's business, that he thought West ought never to have been allowed to give notes. Haven himself testified, in regard to the same witness' testimony, that he had no recollection of any such statement, that when West was dismised he left the business in bad shape, that he was a very unfaithful agent, and that, if he had ever said any thing similar to that above detailed, it was this,—"that West ought never to have given notes ; " Haven farther stated that he never had any knowledge that West gave any notes, until about the time he was dismissed, and that he, Haven, had the entire management and control

Denison *v.* Tyson.

of the business, and the defendant took no oversight, except as he occasionally visited the state, or had information given him at Baltimore.

The plaintiff requested the court to charge the jury, that, although they might not find, that West had a general authority to give notes for money, yet that the paper offered in evidence was not of that character, as it bore upon its face intrinsic evidence of being within the scope of his authority,—it being only a bill of delivery of articles sold, for which said agent had received his pay in advance.

But the court charged the jury, in substance, that the authority delegated to West to sell stoves and hollow ware, in the manner proved, would not justify him in giving notes of the character of the one now in suit, and to bind the defendant by his acknowledgment of having received the value to his use; but that, if the plaintiff would recover upon the contract, he should declare upon it as a contract merely, and show by proof, that it come within the scope of West's agency; that, for aught that now appeared to the court, or jury, the note in question might have been given for a consideration wholly without the scope of West's agency; that if West had express authority to give such notes, or if the general scope of his authority were enlarged, so as to justify him in giving such contract, or if, such authority being exceeded by him, his acts in this respect were, by the defendant, or his general agent, recognized, in either case the plaintiff would be entitled to recover; but that, if no such authority were expressly given, either at the time of his being employed, or by subsequent extension of his discretion, or by recognition, and the general agent only paid such note, or notes, as, on inquiry and examination, he found to have been given for considerations coming within the scope of West's authority and to have come to the defendant's use, this would not be sufficient to justify a recovery on this contract, without going into its consideration.

The jury returned a verdict for the defendant. Exceptions by plaintiff.

*G. C. & E. A. Cahoon* for plaintiff.

I. We contend, from the facts in the case, that West had authority to give notes.

1. By implication of law, and as incident to his agency. Chit. on Cont. 212, 219. *Stowe* v. *Wise,* 7 Conn. 219.

2. By recognition of his acts by his principal. Chit. on Cont. 213. 2 Stark. Ev. 57.

3. What the consideration of the note may have been is immaterial; for West was authorized to sell either for cash, or *other pay*, and to give credit in his discretion. *Proctor* v. *Webber*, 1 D. Ch. 371. *Roberts* v. *Button*, 14 Vt. 195.

II. If West had never received authority to execute promissory notes, technically speaking, still he was empowered to make contracts similar to the one in question.

1. When West was employed to sell the ware of the Tyson Furnace, he was impliedly invested with the power to bind his principal by such acts, as were necessary to render effectual the purpose of his agency. Accordingly he sold the stoves and ware specified in the writing in question, received pay for the same, and, not having the ware with him in person to be that moment delivered, gave that writing as evidence of the contract. His business being to make sales, the delivery of articles sold must, from the nature of the case, be made when and where the parties might agree.

2. Although the paper in question may have been declared on as a promissory note, that cannot change the character or nature of the paper, or of the transaction; but it is still to be regarded as evidence of the contract, and as a bill of sale of articles, then sold, to be thereafter delivered; and it is virtually a *contract* instead of an ordinary promissory note. It is similar to the contract in the case of *Roberts* v. *Button*, 14 Vt. 195, which, though expressed in terms resembling a note, was not, by the court, exclusively so considered.

3. It does not appear, from the facts in the case, that West was limited in the manner of effecting sales. 2 Kent 620.

4. When the defendant employed West to sell stoves and hollow wares, he was authorized to receive pay; and all who purchased of him, and paid him in good faith, are protected, notwithstanding West may have appropriated the avails to his own use. 2 Kent 629. 3 Stark. Ev. 619. *Cross et al.* v. *Haskins*, 13 Vt. 536. *Williams* v. *Mitchell*, 17 Mass. 98.

*T. Bartlett* for defendant.

To justify a recovery against the defendant, the plaintiff should have proved that the consideration of the note came within the

scope of West's agency; otherwise it is, in law, the note of West, and not of Tyson. West was a sub-agent, with special and limited powers; and such a special agent cannot bind his principal, if he exceed the authority delegated to him. 2 Kent 620. *Fenn* v. *Harrison*, 3 T. R. 757. *Munn* v. *Commission Co.*, 15 Johns. 43. *Gibson* v. *Colt*, 7 Johns. 389. *Beals* v. *Allen*, 18 Johns. 362. Com. on Cont. 760. *Batty* v. *Carswell*, 2 Johns 48. West was a sub-agent for making sales, and the power to sign notes was expressly denied to him; when, therefore, he undertook to pledge the responsibility of Tyson, by executing the note in question, he exceeded his authority, and Tyson is not bound,—and more especially when it does not appear that there is any connection between the consideration and the business of Tyson. 2 Kent 620. *Emerson* v. *Providence Hat Manufacturing Co.*, 12 Mass. 237.

The opinion of the court was delivered by

REDFIELD, J. The contract, declared upon in the present action, must be treated as a promissory note, according to the decisions in this state, both as to the form of declaring upon it, and the necessity of going into proof of the consideration, in the first instance, on the part of the plaintiff. *Dewey* v. *Washburn*, 12 Vt. 580. *Brooks* v. *Page*, 1 D. Ch. 340.

In regard to the right to bind the defendant by the bare acknowledgement of " value received," the same authority is required, to execute this note, as a promissory note, in the strict sense of the terms. It is no doubt true, that, at common law, such a memorandum as this note could not, in any sense, be treated as a promissory note. It would, at most, be a mere admission in writing, and would, perhaps, *prima facie*, import the receipt of so much money to the use of the person to whom it was payable, but must be declared upon specially, and the recovery might be defeated, by showing that no money was in fact received;—so that, at common law, such a writing, unless actually given for money advanced, would be of little benefit. Hence it is true, doubtless, that no such species of contract has ever been in general use any where, except in New England. The late Mr. Justice Fletcher, of the King's Bench in Canada, when he first came into the eastern townships to preside at their trials of matters of fact, was very much annoyed by this species

of contract, which had been imported there from this state. But, with all the energy of his brilliant talents, so deeply rooted was the practice, and of so great convenience in a country remote from market, and where commerce consisted, in a great measure, in the barter of commodities, he was at last compelled to admit, that it was not an easy thing to uproot the long established usages of business, even in a limited section of country. The worthy and learned justice of the King's Bench finally exclaimed, *in furore,* and almost in despair, that he thought it *was* asking too much, that the court should sit all day, to determine the amount of damages to be assessed upon a "*promissory note! for two middling, likely, young calves*"!! But the venerable man, the learned and eloquent judge, backed by the entire weight of the British crown, found it no small labor to convince the people of his district, that such a contract was not a "promissory note." In this state we have taken a shorter way of settling the matter, by deciding that all commodities, in which our citizens deal, shall serve as a *quasi* currency.

The jury having, in the present case, determined, under proper instructions, that the agent of the defendant, who executed this note, had no express authority to do so, and that such acts of his were not adopted by any subsequent recognition of the defendant, or of his general agent, the only remaining question is, whether any such authority is to be implied from the general scope of the business, in which the agent was employed. This, it would seem, would not be difficult of determination, if we regard the general custom of the country in reference to such agencies,—which must have been the rule, by which the agent would be expected to govern himself, and so must be esteemed an important qualification of the contract of agency.

The agent was employed, as a sub-agent, to dispose of wares in a portion of the state. He was employed to *sell,*—not to *purchase* other property, nor to raise money on the credit of the defendant, even if the payment should ultimately be made in stoves,—much less would he be supposed to have authority to execute promissory notes on the part of the defendant. All this might properly fall within the scope of the general agency of Haven; and if West made contracts of this kind, and proposed to bind the defendant by such a note, when he was expressly forbidden to do so, there could be no

Denison v. Tyson.

doubt, so far as he was concerned, that he acted beyond the scope of his authority, unless he had express permission from Haven, or the defendant. And to us it seems there was nothing in the nature of West's employment, calculated to induce others to believe that he had any authority to bind the defendant by such a contract as the present.

This contract, so far as the "value received" is implied from its terms, is the mere *admission* of the agent. The admission of an agent will never bind the principal, except in connection with some act, which he is authorized to do. And in the present case, unless he had authority to execute such contracts, there is *no act* of the agent shown. This admission, then, is a naked admission of the agent, and, for aught that appears in this case, might have been for his own debt, or wholly without any consideration. We think the case of this agent not very different from that of any pedler, employed to sell goods and take pay in other commodities,—or that of a mere clerk in a store, when the principal, or his general agent, is where he may be consulted. In such case it would hardly be pretended that the pedler, or the clerk, could bind the principal by such a contract as the present. If that could be done, then such an agent could bind the principal to any extent in amount, and payable an indefinite time in advance. This would be putting it in the power of clerks and pedlers, employed to sell goods merely, very materially to extend the business of their principals.

In such cases we think the person, who takes the contract of the agent in such a form, should be required to show that the consideration paid came either fairly within the scope of the agency, or that it in fact came to the use of the defendant, if he would recover the amount of him. Such is the doctrine of the case of *Emerson* v. *The Providence Hat Manufacturing Co.*, 12 Mass. 237. That case is almost precisely in point, as an authority for the present determination. The result is, that judgment must be affirmed.

The counsel for the plaintiff moved the court to reverse the judgment *pro forma*, and remand the case, in order to allow an opportunity to apply to the county court for leave to amend the declaration.

THE COURT decided that they could not listen to such an application in the present stage of the case,—and especially as it ap-

peared that such a course had been suggested to the counsel by the court below, which was at the time declined, the counsel choosing to abide the decision of this court, rather than submit to terms for such an amendment, and the consequent necessity of adducing proof of the consideration of the contract.