# CASES

# SUPREME JUDICIAL COURT,

## MIDDLE DISTRICT,

## 1856.

## COUNTY OF KENNEBEC.

### ANNA W. HEYWOOD *versus* ZIMRI HEYWOOD.

A. agreed to pay B. forty dollars a year, rent, for a farm, the payment to be made in specific articles, at prices and in quantities specified, with the balance in cash, or country produce at cash price : — *Held*, that if A. tender the articles when due, B. must receive them, not at the cash, but at the stipulated price : — *Held*, also, that if A. failed to deliver them as agreed, B. cannot recover them, but must take the forty dollars, which was the agreed measure of damages, in case of default of A. to pay the specified articles.

No word in a contract is to be treated as a redundancy, if any meaning, reasonable and consistent with other facts, can be given it.

When the sum in dollars and cents is expressed in a contract, to be paid by one to the other, it is not to be rejected for a more uncertain standard.

ON EXCEPTIONS from *Nisi Prius*, RICE, J., presiding.

This was an action of ASSUMPSIT, in which the plaintiff claimed an amount due on an account annexed; also rent under a lease of a farm occupied by the defendant. The lease is dated December 11th, 1844, writ dated March 15th, 1853. The payment of rent, provided by the lease, is as fol-

lows, viz.:—"And the said Zimri, on his part, agrees to pay annually to the said Anna W., for the use and rent of said premises, the sum of forty dollars, together with two lambs and two good fleeces of wool, per annum, and to pay all the taxes assessed on said premises, for and during the time he shall be in possession of said premises, under this lease; the payment of said sum of forty dollars to be made after the following manner, to wit:—ten bushels of corn at seventy-five cents per bushel, eight bushels of wheat at one dollar per bushel, twenty-five bushels of potatoes at one shilling per bushel, and two tons of hay at five dollars per ton, the balance in cash, or country produce at cash price."

The Judge instructed the jury, that if they found rent due on the lease from Dec. 11, 1851, to Dec. 11, 1852, (as alleged in the writ,) and a failure of the defendant to deliver the hay, corn, wheat, &c., in payment, the measure of damages, so far as the articles were concerned, would be the market value of the articles at the time and place where the rent fell due.

The verdict was for the plaintiff. The defendant excepted to the above instructions.

*North & Fales,* for defendant.

The promise in this case is not a commercial contract to deliver articles at a stipulated price, but a promise to pay a sum of money in specific articles at an agreed price. In an agreement to pay specific articles, the rule of damages is the value of the articles at the time and place of payment. But when the agreement is to pay a sum of money in specific articles, or a certain sum in specific articles at an agreed price, the price fixed, is the rule of damages. *Brooks* v. *Hubbard,* 3 Conn. 58; *Penney* v. *Gleason,* 5 Wend. 393; *Coucier* v. *Graham,* 1 Ham. 351; *Baily* v. *Clay,* 4 Ran. 346.

When the precise sum is agreed upon by the parties, as in many actions of assumpsit and covenant, the jury are confined to the sum mentioned as the measure of damages. *Leland* v. *Stone,* 10 Mass. 462.

Professor Greenleaf, in his 2d vol. on Evidence, § 259,

says, "it will be inferred, that the parties intended the sum as liquidated damages, when, from the nature of the case, and the tenor of the agreement, it is apparent that the damages have been the subject of actual and fair calculation and adjustment between the parties;" and, as an illustration of this principle, says, "as to pay a sum of money in goods at an agreed price," which we think is the case at bar.

*Drummond*, for plaintiff, contended, that but a single question was presented by the case, and that was, what should be the measure of damages. Is the plaintiff entitled to recover the market value of the articles named, at the time and place of delivery, or merely the forty dollars? The contract is absolute to pay the specific articles, and the measure of damages is the price of the articles at the time and place of the breach. 2 Kent's Com. 480, and note; Chit. on Con. 445; *Gleason* v. *Pinney*, 5 Cowen, 411; *Brooks* v. *Hubbard*, 3 Conn. 58; *Smith* v. *Smith*, 2 Johns. 235.

TENNEY, J. — This action is for the recovery of the arrears of rent, claimed to be due under a lease, in which is the following: "And the said Zimri, on his part, agrees to pay annually to the said Anna W., for the use and rent of the premises, the sum of $40, together with two lambs and two good fleeces of wool, per annum, &c., the payment of said sum of $40 to be made after the following manner, to wit: ten bushels of corn at 75 cents per bushel, eight bushels of wheat at $1 per bushel, twenty-five bushels of potatoes at 1 shilling per bushel, and two tons of hay at $5 per ton; the balance in cash, or country produce at cash price."

Among other things, the plaintiff claims the entire rent of the premises for one year, ending Dec. 11, 1852, and insists that she is entitled to the amount of the actual market value at that time, of ten bushels of corn, eight bushels of wheat, twenty-five bushels of potatoes and two tons of hay, in addition to the ten dollars to be paid in cash, or in country produce at cash price, when these articles are shown to have had a value greater than that stated in the lease. On the other

hand, the defendant resists this construction of the contract, and contends that, failing to deliver the specific articles, he is bound to account only for the rent at its agreed value in cash.

The legal question presented in this case, is one which has been before judicial tribunals in other States, and Courts upon it have come to different conclusions. The doctrine, which the plaintiff insists is the true one, has been adopted in *Meason* v. *Phillips*, Addis. Rep. 346, and in *Edgar* v. *Bois*, 11 Serg. & Raw. 445, in Pennsylvania. In New York, also, the same doctrine was held by the Supreme Court, in *Pinney* v. *Gleason*, 5 Cow. 152, 411; in *Clark* v. *Pinney*, 7 Cow. 681; and in the State of Tennessee, as appears by the case of *McDonald* v. *Hodge*, 5 Haywood's Tenn. R. 85. The contrary was maintained in Connecticut, in *Brooks* v. *Hubbard*, 3 Conn. 58, 60; in New York, in *Smith* v. *Smith*, 2 Johns. 243; also, by the Court of Common Pleas, in the case before cited of *Pinney* v. *Gleason*, whose opinion was adopted in the Court of Errors unanimously, and the decision of the Supreme Court was reversed. *Pinney* v. *Gleason*, 5 Wend. 393.

In most of the cases referred to, the market price of the articles at the time stipulated for their delivery, was less than that agreed upon in the contract; and on this point, Chancellor WALWORTH remarks, in referring to the case cited from 7 Cow. 681, upon giving his opinion in *Pinney* v. *Gleason*, 5 Wend. 393: " the particular terms of the contracts are the same in both; and the only difference in the cases is, that in one the salt was worth *more*, and in the other *less*, than the price specified in the note. The same principle, therefore, is applicable to each."

When we apply elementary principles to the question, difficulties, which at first appear formidable, will vanish. Money is the natural standard of value, which theoretically is not supposed to fluctuate from year to year; and when the sum in dollars and cents is expressed in a contract, to be paid by one to the other, it should not be rejected for a more uncertain standard. Hence, a note payable in specific articles, is con-

sidered of less value than a note payable in cash. Chipman on Con. 35.

Pothier holds that the agreements for paying any thing else in the place of what is due, are always presumed to be made in favor of the debtor, and hence he has always the right to pay the particular thing which he has admitted was due, and the creditor cannot demand any thing else; and as an illustration, he puts the case of the lease of a vineyard, at a fixed rent, expressed in the terms of commercial currency, but payable in wine. In such a case, the lessee is not bound to deliver wine, but may pay the rent in money. 2 Ev. Pothier, 347, No. 497. Mr. Chipman supposes a case of a note for $100, payable in wheat at 75 cents a bushel, and concludes that it is within the principle referred to by Pothier, that the debtor may pay the $100 in cash, or in wheat at the price specified. He considers the fair interpretation of the contract to be, *the creditor agreed to receive wheat instead of money, and to avoid disputes about the price, they fixed it in the contract. If, at the time fixed for the payment of wheat, it should be worth 50 cents, when the price fixed in the contract was 75 cents, he may pay his debt at 75 cents. That, if the parties had intended the risk in the rise and fall of the wheat, should be equal with both, the contract would have been simply for the payment of a certain number of bushels.* Chip. on Con. 35.

It is a general principle, that no word in a contract is to be treated as a redundancy, if any meaning, reasonable and consistent with other parts, can be given to it.

In this case, if the principle contended for, in behalf of the plaintiff, should be applied, this contract must be treated the same as a contract to pay the specified quantities of corn, wheat, potatoes, and hay, together with ten dollars in cash, or country produce at cash price, and two lambs, and two fleeces of wool, without the mention of the sum to be paid in the commercial currency. So were the decisions which are favorable to the plaintiff. But this doctrine cannot be admitted. The important agreement, that the sum to be paid was one fixed by the standard of the law, cannot, with propriety, be

disregarded, and the liability be determined by one which is uncertain, changing from year to year, from month to month, and even from day to day; depending, too, upon opinions of men, which may differ essentially according to their places of residence, the business in which they are severally engaged, and their various recollections of facts, which are the basis of their opinion, after they have occurred.

According to written authorities cited, the contract to pay a certain sum in specific articles, at an agreed price, being for the benefit of the debtor, he has the election to pay in that manner, or in cash, at the time agreed upon; and a tender, if made at the exact time of payment, in lawful money, would bar an action on the contract. This is a corollary from the principles of these authorities.

In this case, the value of the rent was fixed at the sum of $40 for each year, payable at its termination. It is manifest, that the parties designed to avoid all uncertainty touching the value of the articles to be paid for the three-fourths of the yearly rent, and fixed the prices themselves. The plaintiff undoubtedly regarded it a less evil to incur the risk of having her rent paid in articles, which she was willing to receive, at a price above the market value at the time of payment, than to ascertain the true value, and perhaps be subjected to litigation, on account of a difference of opinion between herself and the lessee. If he should tender the articles at the day, the rent was paid so far, notwithstanding the real value was much greater or less than that agreed upon; no appeal could lie from their own decision of the value. If the lessee failed to deliver the articles altogether, the standard of the damages to the lessor had been fully agreed upon by them in the contract. If the rent was $40 a year, and corn, wheat, potatoes and hay, to the amount of three-fourths of that sum, were worth a certain and fixed price, by their agreement, it is not perceived, that they designed to seek the uncertain information of the amount to be substituted for these articles, but should be as they had determined, and conforming to the whole value of the rent, as agreed.

It is true, as contended by the plaintiff's counsel, that when the market value of the specific articles, named in the lease, should be below the standard agreed upon, the rent being received therein would fall short of its estimated value; and, in a reversal of this supposed state of the market, the payment in cash could never exceed this sum. It is true, the plaintiff was thus exposed; but the contract cannot, therefore, be changed, if its construction is obvious. Both parties must abide by the contract, according to their intention, as derived from the lease itself. The value of the rent was matter of agreement between the parties, and was not subject to be changed by the omission to deliver the articles, in which it was contemplated payment could have been made.

*Exceptions sustained. — New trial granted.*

APPLETON, J., concurred.

RICE, J., gave the following dissenting opinion.

This is an action of assumpsit. The principal matter in controversy, is the amount of rent due under a lease of a farm occupied by the defendant. The only question presented by the exceptions, is the true rule of damages applicable to the case.

The plaintiff is the lessor of the farm; the defendant the lessee. The lease contains the following provisions: — "And the said Zimri, on his part, agrees to pay annually to the said Anna W., for the use and rent of said premises, the sum of forty dollars, together with two lambs and two good fleeces of wool, per annum, and to pay all the taxes assessed on said premises, for and during the time he shall be in possession of said premises under this lease; the payment of said sum of forty dollars to be made after the following manner, to wit: — ten bushels of corn at seventy-five cents per bushel, eight bushels of wheat at one dollar per bushel, twenty-five bushels of potatoes at one shilling per bushel, and two tons of hay at five dollars per ton, the balance in cash or country produce at cash prices."

The defendant contends that he is liable to pay, at most,

forty dollars, and that he has his election under the contract, to make that payment in cash, or in the articles specified in the lease, at the prices therein agreed. The plaintiff contends that she is entitled to the specific articles named in the lease, and, in default of delivery, to their fair market value at the time and place of delivery, in cash.

Whether instruments of this kind are to be treated as contracts for the payment of a specific sum of money, but in which a *privilege* is reserved to the payor to pay the same in specific articles, at the price agreed, or whether they shall be treated as contracts for the delivery of specific articles, at an agreed price, and at a specified time and place, the authorities are by no means uniform.

In *Smith* v. *Berry*, 18 Maine, 122, it was held that the measure of damages, on a note for the payment of one hundred and thirty casks of lime, was the value of the lime at the time and place of delivery.

If property be sold at a stipulated price, to be delivered at a future day, and in the meantime the property rise, the purchaser is entitled to the rise of the property; and if the property be not delivered, the value of the property, at the time it was to be delivered, is to be the measure of damages. Chipman on Contracts, 121.

Upon a contract for the delivery of goods, the general rule of damages for non-delivery, is the market value of the goods at the time and place of the promised delivery, if no money has yet been paid by the vendor. *Gainsford* v. *Carroll*, 2 B. & Cress. 624; *Shepard* v. *Hampden*, 3 Wheat. 200; *Stevens* v. *Lyford*, 7 N. H., 360; *Williamson* v. *Dillon*, H. & Gill. 444; *Peterson* v. *Ayre*, 24 Eng. L. & E. Rep. 382; *Shaw* v. *Nudd*, 8 Pick. 9; 2 Greenl. Ev. § 261.

It has also been held, that if the vendee has already paid the price in advance, he may recover the highest price of such goods, in the same place, at any time between the stipulated day of delivery and the time of trial. *West* v. *Wentworth*, 3 Cow. 82; *Clark* v. *Pinney*, 7 Cow. 681; 2 Greenl. Ev. § 261.

The reason given for this distinction is, that when the money has not been paid by the purchaser, he has the means in his hands to go into the market and purchase other goods, at the market price, whereas, when the money has been paid over to the seller, he is deprived of his means of purchasing other goods by the wrong of the seller, and therefore the latter should make good the loss the buyer is subjected to by being deprived of the use of his money. This distinction is not universally recognized as sound. *Sargent* v. *Franklin Ins. Co.*, 8 Pick. 90; *Smothorst* v. *Woolston*, 5 Watts & Serg. 106; *Smith* v. *Dunlap*, 12 Ill. 184; Sedgwick on Damages, 277.

In contracts for the delivery of specific articles, at an agreed price, the preponderance of authority is very decided in favor of the rule which holds the price of the article, at the time and place of delivery according to the contract, to be the measure of damages for a breach of the contract, by a failure to deliver. But in contracts where the price of the article to be delivered is not only specified, but the amount to be paid is also incorporated, as in a note or contract to pay a given sum at a specified time and place, in specific articles, at an agreed price, the rule is not equally uniform.

Thus, in *Brooks* v. *Hubbard*, 3 Con. 58, which was assumpsit on a note for two hundred and fifty dollars, in brown cotton shirting, at 30 cents per yard, the Court held the measure of damages to be the amount specified in the note and interest.

In *Smith* v. *Smith*, 2 Johns. 235, the action was upon a note for forty pounds, silver money, to be paid in land, at nine shillings per acre; *held*, the measure of damage was the amount of the note and interest.

In *Gleason* v. *Phinney*, 5 Cow. 152, on a note for seventy-nine dollars and fifty cents, in salt at fourteen shillings per bushel, in good boating order, the Court held, that in default of delivery of the salt, the sum stipulated in the note was the measure of damage, and not the value of the salt at the time and place of delivery.

In *Perry* v. *Smith*, 22 Vermont, 301, which was assumpsit on the money counts, the following note was offered in evidence:—"For value received of Gates Perry, I promise to him or his order, five hundred dollars, to be paid in half-blood merino wool, &c., at two shillings per pound, &c., with interest."

The principal question discussed was, whether this note could be received in evidence under the money counts. But ROLAND, J., in delivering the opinion of the Court, remarked: "In short, by an uninterrupted series of decisions in this State, notes payable in specific articles of property, after the time of payment has elapsed, seem to stand in much the same condition as notes payable in money, except in their lack of negotiability. After the time of payment mentioned in the note has elapsed, or, to use the common and uniform phrase of the community, after the note has "run into money," it is considered purely as an obligation for the payment of money alone, and a fixed and determined sum; and in no sense is such a note considered as merely evidence of a special contract for the delivery of a certain quantity of specific property; or the holder's right and interest in it as a mere claim or right to recover damages of the maker for not having delivered it agreeably to the contract." In support of this doctrine, the learned Judge cites *Dewey* v. *Washburn*, 12 Vt. 580; *Wainwright* v. *Straw*, 15 Vt. 219; *Dennison* v. *Tyson*, 17 Vt. 549. In neither of these cases, however, was any specific price fixed, at which the articles, in which payment was to be made, should be delivered; but they were to be delivered either at *cash* prices, or at *wholesale* prices. This is a very important distinction, for in such case the amount specified in the note, and the value of the article to be delivered, would necessarily be the same.

Chipman, in his work on Contracts, at page 35, lays down doctrines substantially the same as those already cited from the Vermont Reports.

In *Clark* v. *Pinney*, 7 Cow. 297, the action was upon a note for fifty dollars in good, first quality common salt, at one dol-

lar and fifty cents per barrel. The Supreme Court of New York held that the measure of damages, was the value of the article at the commencement of the suit. But this decision was overruled by the Court of Errors, 5 Wend. 393, and the amount of the note and interest decided to be the true rule.

In *Meason* v. *Philips*, Addison, 346, which was covenant upon a lease of land for four years, at twelve shillings per acre, payable in good merchantable grain; wheat at four shillings, rye at three shillings, and corn at two shillings and sixpence per bushel, it was held that the damages were the price of the grain at the time and place of delivery. The Court say that, "grain, not money, was the object in view of both, and money was only used to ascertain the quantity of grain. The chance of gain or loss must be mutual." In a note to this case, the reporter cites three other cases in Pennsylvania, not reported, which had been decided on the same principle.

*Eager* v. *Bois*, 11 S. & R. 44, was on an agreement to deliver a quantity of whiskey at stipulated prices. The value of the whiskey at the time and place of delivery was held to be the measure of damages.

In *Matton* v. *Craig*, 2 Bibb, 584, which was on a note for eighty-nine dollars, to be discharged in good merchantable brick, common brick at four dollars per thousand, and sand brick at five dollars per thousand, the Court decided that the note was not for payment of money, but for the payment of brick.

In *Hixon* v. *Hixon*, 7 Humph. 33, on a note for payment of one hundred dollars in Georgia, or Alabama, or Tennessee bank notes, or notes of any good men, the Court held the measure of damages to be the specie value of the notes in which payment might have been made, and in which it would have been most for the interest of the covenantor to have paid.

In *Smith* v. *Dunlap*, 12 Ill. 184, on a note for $131,480,52, in "State of Illinois indebtedness," the Court held that the obligation was in fact but a promise to deliver so many dollars, numerically, of the securities described; and if the

debtor failed to deliver them according to the terms of the contract, he was responsible for their real, not their nominal value, and that their cash value was the true amount of indebtedness to be discharged.

In *Wilson* v. *George*, 10 N. H., 445, which was assumpsit on the money counts, a note for eleven dollars and twenty-two cents, to be paid in wheelwright work, was offered in evidence. PARKER, J., in delivering the opinion of the Court, remarked, "It has been thought that contracts for the payment of a certain sum, in specific articles, at a certain price, give the debtor an election to deliver the articles at the price specified, or to pay the sum in money. If this was the settled exposition of such contracts, although they approach more nearly to the character of promissory notes, a declaration for money had and received, would hardly seem to be applicable. But we cannot regard this as the true construction of such contracts. Such is not the language of the agreements, nor, as we think, the usual understanding of the parties. The payee may generally be willing to take the value of the specific articles in money, because it will be more advantageous; but he has a right to require the property according to the terms of the promise."

In *Cole* v. *Ross*, 9 B. Monroe, 393, which was an action on obligation to pay $3,333,33, payable in good merchantable pig metal, at twenty-nine dollars per ton, it was held, (GRAHON, J., dissenting,) that the measure of damages was the value of the pig metal at the time of the breach of the contract. SIMPSON, J., in delivering the opinion of the Court, said, "the expression, *payable in merchantable pig metal*, clearly points out the thing that is to be paid; it is not of the same import as the expression *may be paid* in pig metal. The latter, if used, would have implied an election to pay in the thing named or not, as it might suit the convenience of the obligors; the former, in direct and positive language, makes the amount payable in the thing specified, and shows that it was really a contract for pig metal and not for money, which might be paid by the delivery of the article named; and that

the sum mentioned was merely the medium by which the quantity of the thing contracted for was to be ascertained, according to its stipulated value per ton."

Mr. PARSONS, in his recent work on Contracts, vol 2, p. 490, in treating of contracts of this character, remarks, "there might be something in the form of the promise, in the *res gestæ*, or in the circumstances of the case, which, by showing the intention of the parties, would decide the general question; but in the absence of such a guide, and supposing the question to be presented merely on the note itself, as above stated, we should say that the more reasonable construction would be, that it was an agreement for the delivery of goods in such a quantity as named, and of such a quality as the price there indicated. And on a breach of this contract, the promisor should be held to pay as damages the value of so much of such goods at their increased or diminished price."

In this apparently conflicting state of the authorities, we are required to resort to general principles of construction to determine the true character of the contract under consideration.

It is a principle universally recognized as sound, that the intention of the parties should control in the construction of contracts. That intention is generally sought in the terms of the contract itself. If these terms are ambiguous, reference may be had to the situation of the parties, and the circumstances surrounding the case.

There is also another principle of general application in the construction of contracts, which is, that force and effect, shall, if practicable, be given to all their provisions and stipulations; that no part shall be discarded which is intelligible in itself, and in harmony with the general provisions of the instrument.

An examination of the case before us will, I think, disclose no uncertainty, no conflict in its terms. All its provisions are in harmony with each other. The amount to be paid — the articles in which payment is to be made — the price at which these articles are to be delivered — the character of the arti-

cles — are all set out in equally distinct, affirmative terms. In these several stipulations there is no conflict, no repugnance. Nor are there any alternative stipulations. The lease does not stipulate that the rent may be paid in the articles stipulated *or* in money. On the contrary, all its provisions are unqualified and certain.

Then, again, the situation of the parties, taken in connection with the subject matter of the contract, harmonizes with this construction. The plaintiff is the lessor of a farm, and receives her rent in those articles of produce which are necessary for her support and personal comfort; corn, wheat, potatoes, fleeces of wool, lambs and hay, in such quantities as would seem to be suitable for her subsistence with her little stock, and which would be required in equal amounts, were the price, in' money, high or low. Then, again, the discrimination in the contract. Thus, in making up the forty dollars, the quantity and price of the corn, wheat, potatoes and hay, are all specified. These articles would always be required in given quantities for the lessor's subsistence; then the ten dollars, balance, is to be paid in *cash or country produce at cash price.* This would afford the means for procuring those little luxuries, aside from the staple products of the farm, deemed necessary for comfortable subsistence by persons in the situation of the plaintiff.

Entirely consistent with this is the situation of the defendant. The lessee of a farm, he may be supposed to have been desirous to stipulate for the payment of his rent in articles of produce, and in quantities fixed and determined, and not dependent upon the uncertainties and fluctuation of the general market.

It is said, however, that the payor supposes that such stipulations for payment in specific articles are for his advantage. This is highly probable. But the payee may entertain different views. To him the specific articles may be of more value than money. To compel him, therefore, to receive them when they depreciate below the agreed price, and deprive him of the right to demand them when they advance above that price,

Heywood *v.* Heywood.

is manifestly inequitable. The chance of gain or loss, unless a different intention is manifested, should be reciprocal.

But it is also contended, that in contracts for payment in specific articles, where the sum to be paid is inserted, as well as the price at which the articles are to be delivered, the sum thus specified should be treated as liquidated damages, in case of failure to perform.

It is difficult to perceive any difference in effect, between an agreement to pay fifty dollars, for instance, in hay at ten dollars per ton, and one in which the stipulation should be to pay five tons of hay at ten dollars per ton. In the first case, the sum to be paid, and the price per ton, would determine the number of tons to be delivered; in the latter, the quantity would be determined in direct terms — the result would be the same in each.

But when a given sum is to be paid in specific articles, and that sum is made up of different articles, in different quantities, but at fixed prices, the very complexity of the contract, and the variety of the articles enumerated, tend to show that the *articles*, are the substantive matter of the contract, rather than the sum stipulated, as money.

This is a contract to pay a certain sum, it is true. But it is also an agreement to pay the sum in a *particular manner*. One is as much a part of the contract as the other. Neither, in my judgment, can be dispensed with by one party without the consent of the other. And to permit the defendant, under such circumstances, to be a gainer by a voluntary violation of his agreement, especially when that agreement was made with a woman, would not, in my opinion, be in conformity with the obvious intention of the parties, nor with sound law, nor conducive to good morals.