## JAMES FERGUSON *vs.* JOHN M. HOGAN.

## June 29, 1878.

**Replevin—Damages—Pleading.**—In an action of claim and delivery, the value of the use of property, during its wrongful detention, may properly be shown and considered in the matter of damages. But as such damages do not necessarily accrue from the loss of such use, they are special, and must, therefore, be specially pleaded.

**Chattel Mortgage—Expenses of Sale.**—When a chattel mortgage provides for the payment of "all expenses for the sale" of the mortgaged property out of the avails of such sale, only such expenses are intended as are incurred in doing such things as form part of the proceedings of sale.

**Note and Mortgage payable in Labor—Damages—Tender.**—The plaintiff executed to defendant a written instrument in these words, viz:

"$300.                              LITCHFIELD, Minn., March 29, 1877.
"For value received, I promise to pay John M. Hogan, on or before July 20, 1877, three hundred dollars, to be paid in breaking land for the said Hogan, in section 25, town 121, range 39, in the town of Benson, Swift county, Minnesota, at the stipulated price of three dollars per acre.                              "JAMES FERGUSON."

To secure the liability created by this instrument, plaintiff executed and delivered to defendant, a chattel mortgage, by the condition of which, "in case of a default in the payment of the said debt and interest, or any part thereof," at the time above provided, the defendant was authorized to take possession of and sell the mortgaged property, the avails, less expenses for sale and keep, to be applied towards the payment of said debt. *Held,* that in case of a note like that above recited, where the promise is in terms to pay a gross sum of money in specified services at a specified rate, the parties are to be taken as having put a valuation upon the contract, and as thus having themselves fixed and liquidated the damages resulting from its breach. The sum recoverable for the breach is thus made certain, and, hence, in a case in which the maker can derive any advantage from a tender, the amount necessary to be tendered on account of the breach is definitely ascertained, so that a tender can be made: hence, the maker of a note like that before recited can redeem from a chattel mortgage like that given to secure the same, by paying or tendering, in money, the amount for which he is liable thereon, thus made definite, together with enough more to cover interest thereon from the time when it became due, and to pay all proper charges for sale and keep.

This action was brought in the district court for Swift county, to recover possession of four horses, alleged to have been wrongfully taken from plaintiff, by defendant, together with damages for their detention. The averment of damage is as follows:

"And the plaintiff avers that, at the time of the taking of said horses, he had a contract for the cutting and harvesting of fifty acres of grain, at an agreed and stated price of five dollars per day, and the further contract for the stacking and threshing of the same, at five dollars per day; that it would have taken him twelve days to cut, harvest, and stack and thresh said grain; that by reason of the taking of the said horses, as aforesaid, plaintiff wholly lost the benefits of the said contract; that he had no other horses wherewith to perform the same, and that he could not hire or procure a team wherewith to perform the same; whereby plaintiff has been damaged to the sum of sixty dollars.

"And the plaintiff further avers that at the time of the taking of said horses, as aforesaid, he had another contract, in writing, for the cutting and stacking of 200 tons of hay at the agreed and stated price of three dollars per ton; that by reason of the taking of said horses, as aforesaid, the plaintiff wholly lost the benefits of said contract, and was and is wholly and entirely deprived from performing the same, or any part thereof; that he has no other team wherewith to perform said contract, and has been and is wholly unable to hire or procure a team wherewith to perform the same; that he is liable to suit for the non-performance thereof, whereby damages would be recovered against him, whereby the plaintiff has been damaged in the further sum of three hundred dollars."

The answer alleged, among other things, the making by plaintiff to defendant of the following promissory note:

"LITCHFIELD, MINN., March 29, 1877.

"For value received, I promise to pay to John M. Hogan, on or before July 20, 1877, three hundred dollars, to be paid

in breaking land for the said Hogan, in section 25, town 121, range 39, in the town of Benson, Swift county, Minnesota, at the stipulated price of three dollars per acre.

"JAMES FERGUSON."

The answer further alleged that to secure the payment of the note, the plaintiff made to defendant a mortgage of the horses in question, the mortgage (a copy of which is annexed to the answer) bearing even date with the note, and reciting that the plaintiff "is indebted unto" the defendant, "in the sum of three hundred dollars, according to the conditions of a promissory note given by the said James Ferguson to the said John M. Hogan, bearing even date herewith, and payable on or before July 20, 1877," and whereby "for the purpose of securing the payment of the said debt and interest, at the time mentioned in said note," the plaintiff mortgaged to the defendant the horses in question. The mortgage contained a provision that "in case of a default in the payment of the said debt and interest, or any part thereof, at the time above provided," the mortgagee might take possession of and sell the mortgaged property, "and the avails thereof, after paying all expenses for the sale and keep of said property, shall be applied toward the payment of said debt."

The answer further alleges that at the time of the taking of the horses, August 8, 1877, the plaintiff was and had been since July 20, 1877, in default, under the terms of the mortgage, in the payment of the money therein secured to be paid by plaintiff to defendant, in the sum of $95, and that plaintiff had not broken the quantity of land required by his said note, or any more than 72 acres, and that the defendant caused the horses to be taken, under the mortgage, by the sheriff, and the necessary proceedings to be taken for a sale of the property, which were in progress when the horses were replevied in this action, at which time there had been lawfully expended by the defendant, in foreclosing the mortgage, the sum of $25.

The plaintiff replied, alleging that there was due on the

note $66 only, with interest from July 20, 1877, and denying that there was ever any default except to that extent, or that defendant had expended any sum in foreclosing the mortgage, and alleging that, on August 8, 1877, and before the taking of the horses, he tendered the defendant $80.79, in payment of the balance due on the note and interest, together with all costs incurred by defendant in attempting to foreclose the mortgage.

At the trial before *Brown, J.*, the plaintiff, under objection and exception, introduced evidence of the value of the use of the horses while he was deprived of possession of them; also the evidence of one Flanner, as to a verbal agreement between himself and plaintiff, in the last of July, 1877, whereby plaintiff agreed to cut, stack and deliver to Flanner, 200 tons of hay at three dollars per ton, which agreement was reduced to writing after this action was brought, the written contract being dated back to July 26th. As to the contracts, Flanner testified that "my understanding was that the contract was to be dated back to the time the verbal one was made; in the verbal contract there was nothing said about the time the hay was to be put up; it was merely an informal conversation; the contract was not as complete as when it was put in writing." Under like objection and exception the plaintiff introduced in evidence the written contract, and also introduced evidence as to a tender, in lawful money, of the amount of the unpaid balance of the mortgage debt and costs. The defendant also objected to the exclusion of evidence offered by him of the expenses incurred by him "in going to and returning from placing the mortgage in the sheriff's hands," and in attending the mortgage sale. The jury found for the plaintiff, a new trial was refused, and defendant appealed.

*O'Brien & Eller*, for appellant, cited, among other cases, *Morey* v. *Enke*, 5 Minn. 316 (392;) *Coffin* v. *Reynolds*, 21 Minn. 456.

*H. W. Brown*, for respondent.

BERRY, J.   1. This is an action of claim and delivery, in which the plaintiff seeks to recover four horses, alleged to have been wrongfully taken and detained by defendant, or their value, together with damages for their detention.   Upon the trial, plaintiff was permitted to prove (defendant objecting) the value of the use of the horses during the time of their detention.   In an action of this kind, the value of the use of property during its wrongful detention may properly be shown and considered in the matter of damages.   *Sherman* v. *Clark*, 24 Minn. 37; *Yandle* v. *Kingsbury*, 17 Kans. 195.   But as damages, other than nominal, do not necessarily accrue from the loss of such use, they are special.   1 Chit. Pl. 458; Sedg. on Damages (6th ed.) 575; *Spencer* v. *St. Paul & Sioux City R. Co.*, 21 Minn. 362.   They must therefore be specially pleaded.   *Gray* v. *Bullard*, 22 Minn. 278.   They were not so pleaded in this case, and hence the court erred in admitting proof of them, in the face of defendant's objection. ·

2. The plaintiff offered in evidence a written contract entered into by him, for cutting and stacking hay for one Flanner.   The contract was offered and received for the purpose only of showing that there were "use and business" for plaintiff's horses during the time of their detention by defendant.   The evidence was objectionable for two reasons: *First,* it was entirely irrelevant, because, as we have seen, no damages, arising from the loss of the use of the horses, were pleaded; *secondly,* it appeared that the contract was made after this action was commenced, and after the horses were replevied from defendant's possession, and that it was made for the purpose of being used upon the trial, for which purpose it was antedated.   Now, if the pleadings had been such as to warrant the admission of evidence showing a demand for horse-work during defendant's detention of plaintiff's horses, it is evident that this contract, made after such detention, would have no tendency to show such demand.   The contract was therefore improperly received.

3. The chattel mortgage involved in this case provided for the payment, out of the avails of the sale of the mortgaged property, of "all expenses for the sale and keep of said property." The words, "all expenses for the sale," as here used, include only such expenses as are incurred in doing such things as form part of the proceedings of sale; they include the expense of a copy of the mortgage, of taking the mortgaged property, of giving notice of sale, and of conducting and completing the sale; they do not include the mortgagee's expenses, "incurred in placing the copy in a sheriff's hands, or in attending the sale." As applied to the case of a sale, the words, "all expenses for the sale and keep of said property," appear to be substantially equivalent to the statutory words found in section 6 of the chattel-mortgage act, (Gen. St. c. 39,) viz.: "All reasonable and lawful charges and expenses, incurred in the care and custody of the property, or otherwise arising from the mortgage."

4. The plaintiff executed and delivered to defendant a written instrument, as follows, viz:

"$300.          LITCHFIELD, Minn., March 29, 1877.

"For value received, I promise to pay to John M. Hogan, on or before July 20, 1877, three hundred dollars, to be paid in breaking land for the said Hogan in section 25, town 121, range 39, in the town of Benson, Swift county, Minnesota, at the stipulated price of three dollars per acre.

"JAMES FERGUSON."

To secure the liability created by this instrument, plaintiff executed and delivered to defendant a chattel mortgage, by the condition of which, in case of a default in the payment of the said debt and interest, or any part thereof, at the time above provided, the defendant was authorized to take possession of and sell the mortgaged property, the avails, less expenses for sale and keep, to "be applied towards the payment of said debt."

There is no little diversity of opinion as to the nature of the obligation assumed by the maker of what is called a note

payable in specific articles or specific services. By some it is held that the maker has an option to discharge his obligation by a delivery of the articles, or a performance of the services, (as the case may be,) or by a money payment of the gross sum named in the note. Under this holding, the measure of damages, in case of non-delivery or non-performance, is the gross sum named, with interest. By others it is held that the maker can discharge his obligation only by delivering the articles or performing the services, and that the measure of damages in case of non-delivery or non-performance is not the gross sum named, with interest, but the actual value of the articles or of the services, with interest. The preponderance of authority is with the former of these holdings. See cases collected in *Heywood* v. *Heywood*, 42 Me. 229; Field on Damages, § 229. Without now attempting to determine the whole question involved in these diverse holdings, we are of opinion that, in case of a note like that before us, when the promise is in terms to pay a gross sum of money in specified services, at a specified rate, the parties are to be taken as having put a valuation upon the contract, and as thus having themselves fixed and limited the damages resulting from its breach. The damages being thus fixed and liquidated, the sum recoverable for the breach is made certain. Hence, in a case in which the maker of such note can derive any advantage from a tender, the amount necessary to be tendered on account of the breach is definitely ascertained, so that a tender can be made. As applied to a case like this at bar, these views of the construction and effect of a note like that made by the plaintiff enable the maker of such note to redeem from a chattel mortgage given to secure the same, by paying or tendering in money the amount for which he is liable thereon, thus made definite, together with enough more to cover interest thereon from the time when it became due, and all proper charges for sale and keep. These views are not precisely those expressed by the court below, in its instruction to the jury upon the points

to which they relate, though perhaps, as applied to the particular facts of this case as it now stands, the practical difference may not be very great. With reference to a new trial, we have, however, deemed it necessary to state what we deem to be the rules of law applicable to the case.

Irrespective of the charge of the court, there must be a new trial on account of the erroneous admission of evidence, as before indicated, and this renders it unnecessary for us to consider the point made as to the insufficiency of the tender claimed to have been made by plaintiff.

Order reversed.