## [No. 1780.]
## LEAPOLD ET AL. v. McCARTNEY.

1. CHATTEL MORTGAGES—LEGAL TITLE—RIGHTS OF MORTGAGOR.

After maturity of a chattel mortgage, the legal title to the chattels vests in the mortgagee, and he is entitled to possession. The mortgagor can bring no action at law for possession, but must resort to equity to compel redemption.

2. CHATTEL MORTGAGES—REDEMPTION.

The mortgagor in a chattel mortgage may at any time before forclosure, even after maturity and possession by the mortgagee, tender the amount due and compel its acceptance and relieve his property from the lien, and the debt being paid the mortgagee may be enjoined from further proceeding toward foreclosure.

3. BILLS AND NOTES—PAYABLE IN PROPERTY—PAYMENT.

The maker of a promissory note payable in property has a right to satisfy the note by payment in money.

4. SAME—CHATTEL MORTGAGES—REDEMPTION.

Certain lumber dealers entered into a contract with a sawmill man, whereby the latter was to supply the former with certain lumber, and the dealers furnished the mill man with certain supplies for which they took his note for a certain amount payable in lumber and secured by a chattel mortgage on the mill and fixtures. The chattel mortgage was given alone as security for the note, and not to secure the contract to furnish lumber. *Held*, that the consideration of the note was the supplies furnished, and it might be paid in money, and that the assignee of the mortgagor had a right to redeem from the chattel mortgage by tendering the amount of the note, notwithstanding the default of the mortgagor in his contract to furnish lumber.

5. SAME.

In an action by the assignee of a mortgagor to redeem from a chattel mortgage by tendering the amount in money of a note made payable in property, where the answer alleges the contract to pay the note in lumber, but alleges no specific damages on account of the failure to deliver the lumber, the damage was the value of the supplies furnished for which the note was given, and was liquidated and fixed by the amount of the note and was completely satisfied by the payment of the note.

*Appeal from the District Court of Arapahoe County.*

Mr. JOHN H. REDDIN, for appellants.

Messrs. ROBINSON & ANFENGER, for appellee.

BISSELL, P. J.

As it may be characterized with sufficient accuracy for the purposes of a statement, this is a bill in equity to redeem from a chattel mortgage after maturity. But two of the points which are relied on by the appellants need be considered since the resolution of these adversely to their contention will compel the affirmance of the judgment.

On the 25th of May, 1897, Davies was the owner of a sawmill located on the Snake river in Summit county, and carrying on the general business of a sawmill. Leapold & Jones were lumber dealers in Denver, and on that date made a written contract with Davies for the purchase of some 50,000 feet of merchantable lumber of the kinds and dimensions that might be ordered. According to its terms Davies was to deliver three carloads of lumber on the dates named, at a fixed price per thousand feet. Davies apparently being short of cash entered into an arrangement with them whereby they were to advance him, in supplies needed in and about the mill, $250. By various transfers the title to the sawmill became vested in McCartney, the appellee, and the rights of the contract in the appellants, Leapold & Barr. The circumstances or nature of the transfer and the extent of the interest of these assignees can be well omitted since there is no contention concerning them. To secure themselves for the advances which they agreed to make it was provided that they should be taken as payment for the lumber which was to be delivered and they took a note from Davies for $250 which recited that sixty days after date Davies promised to pay to their order $250 at Denver, payable in 50,000 feet of lumber as per contract with interest at blank per cent. To further secure the payment of the note Davies executed to them a chattel mortgage on the sawmill and its fixtures and appliances. The mortgage was in the ordinary form and transferred certain named personal property as security and the

instrument then provided that if Davies should well and truly pay to the other parties for the redemption of the goods and chattels the full sum of $250 according to his promissory note, then the obligation should be void. The mortgage was also conditioned that he might retain possession until maturity, and that in case of default the mortgagees might take possession and sell, and apply the proceeds to the payment of the note. The mortgage did not either in express terms or by implication provide that it should be security for the performance of the contract other than as to the payment of the note, nor that it should be security for any damages which Leapold and Barr might sustain by reason of any other breach than the nonpayment of the note. It is also true the original contract was conditioned that in case he defaulted in performance and failed to deliver the lumber according to the demands of the vendees, they should have the right not only to enforce the note and mortgage, but also to resort to any other remedy which the law gave them for any breach of the conditions. The supplies were furnished, received by Davies or the assignee, whereby he became obligated to pay the note, either in money or in lumber. Neither Davies nor his assignee further complied with the conditions of the contract except to deliver a small part of the lumber in value amounting to something less than $50.00. The lumber not having been delivered and the stipulated time having gone by the parties extended the arrangement and executed a new note and mortgage for the $250 not otherwise changing the terms of the original contract save as to the date of its contemplated execution. The extension having expired and there having been no performance a dispute arose as to the adjustment of their respective obligations. The assignee, McCartney, who became by transfer the owner of the mill which he took subject to the mortgage, attempted to satisfy it by paying to Leapold and Barr its amount in cash, that is the amount then due which was about $205 as found by the trial court. There was some dispute respecting the time at which they offered performance but the court found the issues tendered by the

bill and answer and on the proof with the plaintiff, and concluded he offered to pay on the date of the maturity of the paper, though he did not then make a tender.   Failing then to tender the money Leapold and Barr sent a man with the mortgage to take possession of the property and he took it. Thereafter and before sale, McCartney made an absolute tender of the money called for by the note, less the credit, and demanded a satisfaction of the mortgage and a return of the property.   This was refused on the ground that it was after date and that the note could not be satisfied except by the delivery of the lumber according to the terms of the original contract, disputing McCartney's contention that the note might be paid in money as well as in lumber and that if they had sustained any damages by reason of the breach of the contract they had another remedy.   The court found all the issues with the plaintiff which necessarily includes the offer to pay, the tender of the amount due after the date and the doing of whatever was necessary to redeem.   McCartney brought the money into court according to his tender and the court made a decree that upon the payment of that money with the expenses which Leapold and Barr had incurred in the attempted foreclosure, they should be barred from the enforcement of the security.   It resulted in a judgment of a little less than $300 which was so far as the decree goes fully executed by making the tender good and paying into court all the money which it required.

It is quite evident from this statement, the only two propositions involved in the appeal respect the right of McCartney to file this bill to redeem from the mortgage, and respects also his right to pay the note in money instead of in lumber. It is earnestly contended by the appellants McCartney was without right to file a bill in equity to redeem from the mortgage, that his remedy was at law, and that he could bring an action in damages for its breach, or as it is suggested he might maintain replevin for the property.   We do not believe either contention is well based.   The law concerning chattel mortgages has been settled by a long series of adjudications, and

it is now thoroughly well established that a mortgagor of chattels after maturity is without legal rights or equitable remedy save a privilege to redeem from the security. After maturity the title to the chattels vests absolutely in the mortgagee who may reduce to possession. The mortgagor can bring no action at law, either in trover or replevin, but he must resort to equity to compel redemption because this equity of redemption is all there is left to him. It is equally well settled that even after maturity the mortgagor may tender the amount due and compel its acceptance and relieve his property from the lien of the security, and the debt being paid the mortgagee would have no right of foreclosure and may be enjoined from further proceeding. The right of the mortgagor to resort to equity for the purpose is exceedingly clear. *Blain v. Foster*, 33 Ill. App. 297; *Heyland v. Badger*, 35 Cal. 404; *Blodgett v. Blodgett*, 48 Vt. 32; *Noyes v. Wyckoff*, 30 Hun, 466; *Stoddard v. Denison*, 38 How. Prac. 296; Jones on Chattel Mortgages, chaps. 14, 15; Herman on Chattel Mortgages, § 173; Pingrey on Chattel Mortgages, § 949. There are a multitude of other cases, and some of our own jurisdiction on similar or collateral questions which are in point, but it is useless to incumber the opinion. Under the facts found by the trial court we conclude since an offer to pay was made on the date of maturity, which was refused, and since the tender was subsequently made and the money brought into court and the tender kept good McCartney had a right to file this bill to compel its acceptance and redeem from the mortgage, providing it be likewise concluded the right inured to McCartney to pay the note in money in place of in property.

This brings us to the other question, which as we look at it, is not only largely settled by the authorities, but is determined by the agreement of parties. We might possibly put the decision expressly on the basis of the agreement, without deciding the precise proposition as to the general rule which gives the maker of a note of this description which is payable in property, the right to discharge it in money. We

think, however, the weight of authority gives the maker of such paper the right to satisfy it in money. The matter has been one of considerable discussion, but the authorities generally concur in holding that the maker may satisfy it by money, the amount of the note being taken as liquidated damages, especially where as in this case, there is a consideration for the note other and independent of the contract for the delivery of the specific articles named in the instrument. It will be remembered from what has been stated, the consideration of this note was not simply the delivery of 50,000 feet of lumber. Leapold and Jones, or Leapold and Barr, either one or the other, or both of these firms, gave another consideration for the note than the simple price of the lumber. It is quite true, the contract was to deliver lumber, the amount was specified that was to be delivered, the price named at which it was to be sold and purchased, and it nominated the dates at which delivery should be made. The note, however, was not given as a security for its performance, but at the very time of the execution of the agreement, the vendees agreed to give supplies in shape of groceries and various things in the conduct of business by Davies and his assignee, and they really paid the price prior to the date named for the execution of the agreement. The consideration, therefore, of the note, was these supplies and not the lumber. It is quite true, Davies or his assignee might satisfy that note by delivering the lumber which would be taken as the purchase price of the supplies. There was, however, an independent consideration, to wit, the supplies themselves. Under these circumstances, in the light of the authorities, the note having an independent consideration, it might well, under the law, be satisfied in money as well as in property. *Pinney v. Gleason*, 5 Wend. 394; *Brooks v. Hubbard*, 3 Conn. 58; *Hise v. Foster*, 17 Ia. 23; *Ferguson v. Hogan*, 25 Minn. 135; *Heywood v. Heywood*, 42 Me. 229; *White v. Tompkins*, 52 Pa. St. 363; *Trowbridge v. Holcomb*, 4 Ohio St. 38.

Regardless of this principle we gather from the terms of the instrument the note and mortgage were in no sense given

to insure the performance of the contract for the delivery of the lumber. The contract expressly states the note and mortgage are given to insure the parties of the second part against loss and damages on account of having paid for the 50,000 feet of lumber. The mortgage was given to secure them from loss by reason of a payment, and for no other purpose, and not as a guarantee for the performance of the original contract. It was likewise stipulated that if Davies should default in the performance of the conditions of his contract, the appellants should have the right to enforce the note and mortgage, and also any other remedies the law might give them for any breach. Under these circumstances it may well and rightly be concluded it was the intention and purpose of the parties to require the execution of the note and mortgage as a security for the advance which they made, and not to insure performance with reference to the manufacture, sale and delivery of the lumber.

We also likewise conclude the judgment was right for another reason. There were neither plea nor proof offered by the appellants to the point that they suffered damages by reason of the breach of the contract arising from the failure of Davies or McCartney to manufacture and deliver the lumber. It was not averred that they had otherwise sustained damages, nor that lumber had risen in price, nor that Leapold and Barr had been damaged because of the failure in that they had been unable to complete contracts into which they had entered, or in any wise to show that the breach had occasioned any damage, other than the loss of the consideration which they had paid in the way of supplies to secure the return of which, the note and the mortgage were undoubtedly given. Under the circumstances, it is quite evident the only loss which came to the appellants was the value of the supplies which they furnished, which was liquidated and fixed as of the value of $250 and these damages would be fully and completely satisfied by the payment of the amount of the note. According to the decree, this amount was not only offered at the date of maturity but was subsequently

tendered before sale, the tender made good, the money brought into court, and with the expenses was paid in under the terms of the decree.    Thereby the judgment being performed all damages either alleged or proven by the appellants were fully paid and discharged.    Since the mortgage was simply given as security for the payment of the note and not otherwise for the performance of the contract, and it was fully tendered and has been completely satisfied, we are quite clear the right to redeem thereby came to McCartney, the bill was properly filed for the enforcement of that right, and the decree of the court below was fully justified by the law and by the facts.

The judgment is right and it will accordingly be affirmed.
*Affirmed.*