Treat, C. J. First. What is the proper construction of this contract? Is it a note for the payment of §131,480 52, which the maker may discharge on the day it matures, by an equal amount of the obligations of the state of Illinois? Or, is it a contract, by which he only assumes to pay that number of dollars of state indebtedness? If the former, it is the privilege of the debtor to make payment on the day named, in the indebtedness of the state, but, if he fails thus to discharge the obligation, he is bound to pay the sum specified in specie; if the latter, he is, in any event, only liable for the actual value of the indebtedness agreed to be paid. There is a wide difference between the two classes of contracts. Where the promisor undertakes to pay a certain number of dollars in specific articles, such as grain, cattle, or other commodities, he must deliver the property on the day named in the contract, or he becomes absolutely bound to pay the sum stated in money. The sum expressed in the obligation indicates the true amount of the debt; and the other provision is inserted for the benefit of the debtor, and relates exclusively to the mode of payment. If he does not Avail himself of the privilege of discharging the debt in property, the obligation becomes a naked promise to pay the amount in money. But where the promisor agrees to pay a certain sum in bank notes, or other evidences of indebtedness, which purport on their face to represent dollars, and can be counted as such, the sum is expressed to indicate the number of dollars of the notes or evidences to be paid, and not the amount of the debt or consideration. The obligation is in fact but a promise to deliver so many dollars, numerically, of the securities described. If the debtor fails to deliver them according to the terms of the contract, he is responsible only for their real, not their nominal value. Their cash value is the true amount of the debt to be discharged. And beyond the damages directly resulting from the breach of the contract, the creditor is not entitled to recover. The contract in question falls directly within the latter definition. It is an undertaking to pay a given number of dollars of the indebtedness of the state oBIllinois. This indebtedness consists of obligations issued by the state, for the payment of specified sums of money to its creditors. The amount in dollars is expressed on the face of the instruments, and can be at once ascertained by inspection. The debt secured to be paid by this note, was no doubt the market value of the amount of state indebtedness specified, as understood and ascertained by the parties. If they intended that the indebtedness should be received at any other rate than its nominal value, they certainly would have so provided in the contract. This construction of the contract is sustained by the adjudged cases, some of which will be noticed. In Clay v. Huston’s admrs, 1 Bibb, 461, the expression in a note “thirty pounds in militia certificates,” was construed to mean that number of pounds in certificates as specified on their face, and not an amount 'of certificates equal in value to thirty pounds in specie. In Anderson v. Ewing, 3 Littell, 245, a note for the payment of “eight hundred dollars, on or before the first day of September, 1820, in such bank notes as are received in deposite at that time in the Hopkinsville Branch Bank,” was held to be a contract to pay eight hundred paper dollars of the description mentioned. The Court said: “It is true, an instrument drawn, stipulating the payment of a certain number of dollars in cattle, wheat, or other commodities, is construed to mean so much of these articíes as will amount to that sum in specie. But the reason of this is evident. The commodities themselves cannot be counted by dollars, as that name is never applied to them. But this is not the case with bank notes. They engage to pay so many dollars, and are numerically calculated by the numbers they express; so that the expression ‘eight hundred dollars in bank paper’ is universally understood to mean that much money, "when the numbers expressed on the face of the notes are added together, and not as including so many more, superadded, as will make them equal to eight hundred dollars in specie.” In Philips v. Riley, 3 Connecticut, 266, a note for “ Eighty-eight dollars in current bank notes, such as pass in Norfolk between man and man,” was decided to be a contract to pay bank notes of the kind described, to the nominal amount of eighty-eight dollars. In Robinson v. Noble’s admrs, 8 Peters, 181, in an action on an agreement to pay freight at the rate of one dollar and fifty cents per barrel, “in the paper of the Miami Exporting Company, or its equivalent,” the Court held, that the specie value of the paper, when the payment should have been made, was the proper measure of damages. In Hixon v. Hixon, 7 Humphrey, 33, a note for “One hundred dollars, in Georgia, or Alabama, or Tennessee bank notes, or notes on any good men,” was decided to be an obligation for the payment of that many dollars of the notes specified. In Gordon v. Parker, 2 Smedes & Marshall, 485, a note for “five thousand dollars, payable in Brandon money,” was determined to be a contract to pay that number of dollars of the kind of money described. In Dillard v. Evans, 4 Pike, 175, the Court held a note payable in the “common currency of Arkansas,” to be a contract to pay so many dollars of the bank paper then current in the state. Nor is the view we are inclined to take of this contract, in conflict with the cases of Pinney v. Gleason, 5 Wendell, 393, and Brooks v. Hubbard, 3 Connecticut, 58. The former was an action on a note for the payment, of “seventy-nine dollars and fifty cents, on the first day of August, 1822, in salt, at fourteen shillings per barrel;” and the latter was an action on a note for “two hundred and fifty dollars, in brown shirting, at the price of thirty cents per yard, for every yard in length, and to average three-fourths of a yard in width.” It was determined in each of these cases, that the measure of damages was the sum mentioned in the note, and not the value of the articles designated for payment. The sum was stated to express the amount of the indebtedness; and the remaining provision was inserted to give the debtor the option to pay in specific articles, at a stipulated price. The price of the articles was fixed to obviate the necessity of resorting to parol evidence to ascertain the value, and that the debtor might know how much he would be bound to deliver, and the creditor how much he would be entitled to demand, in the event the articles should be tendered. If the note in question contained a provision, that the state indebtedness should be received at a particular rate to the dollar, the cases might be alike in principle; but as it does not, those decisions form no just criterion for the determination of this case. Second. What is the true measure of damages for the breach of this contract? It is well settled, in the case of a contract for the sale or delivery of a personal chattel, that the proper criterion by which to measure damages for the breach of the contract, is the cash value of the article, at the time it should have been delivered. If the consideration has not been paid, the purchaser is only entitled to recover the difference between the contract price, and the market value of the article when the delivery ought to have been made. Leigh v. Patterson, 8 Taunton, 540; Gainsford v. Carroll, 2 Barnewell & Cressell, 624; Shepherd v. Hampton, 3 Wheaton, 200; Shaw v. Nudd, 8 Pickering, 9; Stevens v. Lyford, 7 New Hampshire, 360. To this general rule, the British Courts have made a single exception. In actions on contracts to replace stocks, the measure of damages is held to be the market value of the stocks, at the time they should have been returned, or on the day of trial, at the option of the plaintiff. Shepherd v. Johnson, 2 East, 211; McArthur v. Seaforth, 2 Taunton, 257; Downs v. Buck, 1 Starkie, 318; Harrison v. Harrison, 1 Carrington & Payne, 412. This exception has been recognized in New York, and the principle extended to contracts for the delivery of property, where the price has been paid in advance. In such cases, the vendee is permitted to recover the highest market price, between the period of delivery and the day of trial. West v. Wentworth, 3 Cowen, 82; Clark v. Pinney, 7 ibid, 681; Commercial Bank v. Kortwright, 22 Wend., 348; Wilson v. Little, 2 Comstock, 443. But independent of these cases, and occasional dicta to be found, in a few reported cases, the general rule seems to remain unimpaired by judicial decisions. In the cases of Clay v. Huston’s admrs, Anderson v. Ewing, Hixon v. Hixon, and Gordon v. Parker, before cited, in all of which the consideration of the notes had been advanced, the measure of damages was held to be the cash value of the paper, at the time it was payable. In Smith v. Berry, 18 Maine, 122, which was an action on a note for one hundred and thirty casks of lime, paid for in advance, the Court decided that the payee could not recover beyond the market value of the lime, when it should have been delivered, and interest. In Sargeant v. The Franklin Ins. Co., 8 Pickering, 90, which was an action for refusing to transfer shares of stock, the measure of damages was declared to be the market value of the shares, at the time they should have been transferred. In Smethurst v. Woolston, 5 Watts & Sargeant, 106, which was an action on a contract for the delivery of specific articles, paid for in advance, the value of the articles at the time of the breach was held to be the proper measure of damages. Chancellor Kent, in referring to this subject, holds this language: “I do not regard the distinction alluded to as well founded or supported. It is disregarded or rejected by some of the best authorities cited. The true ride of damages is the value of the article at the time of the breach, or when it ought to have been delivered. That is the plain, stable, and just rule within the contract of the parties. Damages for the breaches of contracts are only those which are incidental to, and directly caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties, and not speculative profits, or accidental or consequential losses, or the loss of a fancied good bargain.” 2 Kent’s Com., 6th Ed., 480, notes. Mr. Sedgwick, in liis Treatise on the Measure of Damages, at page 277, after a thorough examination of the authorities, seems to arrive at the same conclusion. The weight of authority manifestly supports the general rule before laid down, and is against any discrimination in favor of cases in which the price has been paid in advance. It has been applied by this Court to contracts for the conveyance of real estate, where the vendee has advanced the purchase money, On the breach of such contracts, the value of the land at the time it should have been conveyed, is the measure of damages. Buck-master v. Grundy, 1 Scammon, 310; McKee v. Brandon, 2 ibid, 339. We have no hesitation in holding the rule applicable to contracts for the sale or delivery of personal property, without regard to the circumstance, whether the price has been paid or not. If unpaid, the purchaser recovers the difference between the price he agreed to pay, and what the commodity was worth, when it should have been delivered; if paid, he is entitled to> recover the market value of the article, when the delivery ought to have been made, and interest in the way of compensation for the delay. This is as full an indemnity as can well be accorded, consistent with the policy of the law. Legal rules ought to be general in their application, so far as to-embrace all cases depending on the same principles.. There is-no- more reason for exempting cases like the present from- the operation of the generl rule, than there is for holding in the case of the breach of a contract to pay money, that the creditor may recover damages beyond the amount agreed to be paid and interest. He may be, and in point of fact generally is, as seriously injured by the neglect of his debtor to pay a money demand on the day it falls due, as he is by his failure to perform promptly a promise to pay a debt in specific articles. And yet, it would not for- an instant be contended, in the case of the obligation, to pay money, that the sum specified, does not form the only criterion for estimating-the damages. It is as much within the understanding of the parties, that the value of the specific articles is to be the measure of damages, for the breach of the contract to deliver them, as it is that the sum stipulated to be paid is to be the measure of damages, for the breach of the contract to pay money. We hold, therefore, that the true measure of damages for the non-fulfilment of this contract, is the market value in specie of state indebtedness, on the day it should have been paid, and interest thereon to the day of trial. This was the- decision of the Circuit Court, and its- judgment must be affirmed. Judgment affivmed„