# FOLKES & WINSTON

*v.*

# RUCKER.

(*Special Court of Appeals of Virginia, May, 1882.*)

[Virginia Law Journal, 1882, p. 301.]

**Contract for Exchange of Certain Cotton—Breach—Damages—Case at Bar.**

In July, 1863, plaintiffs entered into a written agreement with defendant, by which the latter was to give the former 96 bales of cotton stored in Wayne county, Miss., and 70 bales stored at Selma, Ala., in exchange for a lot of cotton belonging to the plaintiffs then in Lynchburg, Va. It was further agreed, that defendant should transfer the original bills for the cotton to the plaintiffs; pay all expenses and charges and all kinds of taxes on the cotton, due up to the date of the contract; and that, if any bale should be damp at the date of the delivery, it should be rejected. Plaintiffs complied with the contract on their part. The original bills were delivered by the defendant, and they represented the cotton to be at the points named in the contract. In May, 1865, plaintiffs went to get the cotton. They found the 96 bales in Mississippi. Of the Selma lot, only 21 bales had been stored there, and that was burnt by the Federals. The other 49 bales had been at points 70 miles from Selma; only 12 could be recovered, by permit from the military authorities of the United States, and expenses were incurred in doing this, and repacking these 12 bales. A federal tax was laid on cotton in March, 1864, which plaintiffs had to pay. In an action of assumpsit to recover the taxes and expenses of repacking, and the value of the cotton which was not delivered by defendant.

**Same—Same—Same—Federal Tax.**

*Held*: As to the federal tax. The cotton being in the confederate lines at the date of the exchange, was not liable to it then, and therefore defendant is not now liable for it under his

contract with plaintiffs. As to the 21 bales which were at Selma, and destroyed, they are not even claimed in the bill of particulars. As to the 49 bales which were not at Selma, the plaintiffs are entitled to recover their value (less the value of the 12 bales recovered, and the costs of repacking these) as of the date of the contract; and this would be so, even if it should be shewn that these 49 bales were more secure at the points at which they were delivered, than at Selma.

##### Same—Same—Waiver—Case at Bar.

The fact that the plaintiffs accepted bills for the 49 bales from the agent of the defendant, as then being at the point distant from Selma, would have waived the original contract to deliver at Selma, if the cotton had really been at the point then referred to in the bills; but not otherwise. Nor did the fact that plaintiffs accepted an order from the military authorities for the 12 bales at the point distant from Selma, waive the contract to deliver it at Selma.

This was a writ of error to a judgment rendered by the circuit court of the city of Lynchburg, in an action of assumpsit brought by E. J. Folkes and J. L. Winston, partners under the style of Folkes & Winston, against Ambrose B. Rucker. The facts are sufficiently stated in the opinion of the court.

*Mosby & Brown* and *Wm. L. Royall*, for the plaintiffs.

*J. W. Daniel* and *Marshall & Johns*, for defendant.

McLAUGHLIN, J., delivered the opinion of the court.

This is an action of assumpsit instituted in the circuit court of Lynchburg, by Folkes & Winston, the appellants, against A. B. Rucker, the appellee, to recover the value of certain cotton alleged to have been sold to the plaintiffs by the defendant, and not delivered; and also certain charges paid on the cotton sold, and delivered. The declaration contains the common counts, and also several special counts, and is accompanied with a bill of particulars, as required

by the statute, in which the nature of their demand is specifically set forth.  The defendant appeared, pleaded the general issue, and also filed an account of set-offs.  Upon the trial of the case a jury was waived, and the question of law and facts were submitted to the court.  The court, after hearing the evidence, decided that the plaintiffs should take nothing by their bill, and gave judgment for defendant. From the judgment the appellants obtained a writ of error and supersedeas to the district court of appeals at Lynchburg, which has been removed to this court for determination.

It appears that on the 13th day of July, 1864, Folkes & Winston and Rucker entered into an agreement in writing by which the latter agreed to give the former ninety-six bales of cotton stored in Wayne county, Mississippi, weighing 50,515 pounds, and seventy bales stored in Selma, Alabama, weighing 37,744 pounds, in all 88,259 pounds, in exchange for 29,516 pounds in the city of Lynchburg, the same to be delivered by Folkes & Winston within ten days. It was further agreed that Rucker was to transfer the original bales of cotton and was to pay all expenses and charges on the cotton exchanged by him to the date of the contract and the taxes, either city, county, state or federal, that had been put on the cotton for that year and prior to the sale.  It was further agreed that if, upon the delivery, a bale should be found unmerchantable from dampness, it was to be rejected, and Rucker represented his cotton to be in grade "middlings" and in good order and well stored with insurance on same. The contract was written by Rucker.  It is conceded that the term "Federal" was a mistake, and should have been Confederate.

Folkes & Winston delivered the cotton in Lynchburg and complied with the contract on their part, except as to 236 pounds, which were subsequently settled for and which need

not be considered here.   The original bills were delivered by Rucker to Folkes & Winston, and represented all of the seventy bales, as had Rucker in his contract, to be at Selma. In May, 1865, Winston visited Alabama and Mississippi in search of the cotton, and received ninety-four bales of the Mississippi cotton.   He found, of the seventy bales represented to be stored at Selma, only twenty-one had been stored there, which had been burnt by the federal forces in April, 1865 ; that twenty-eight bales had been stored at Porks' Landing, a point about seventy miles from Selma, and twenty-four at Donaghe's plantation.   Of the cotton at Porks' Landing and Donaghe's plantation, only twelve bales were recovered, the residue was either burnt or carried off by the federal forces.   Winston also paid $843.88 federal tax on Mississippi cotton and $512.75, costs of repacking same, and also $128.92 federal tax on Alabama cotton and $180.00, costs of repacking the same, which is claimed in plaintiffs' bill of particulars.

We will consider the several claims in plaintiffs' bill of particulars in succession:

First, as to the Wayne county cotton.   It is claimed that there is a deficiency of two bales in this cotton, and that the same was not in good order when sold.   But the evidence does not satisfactorily prove this.   It is strongly to be inferred that two bales had been stolen by the negroes, and the only evidence of its condition in July is the inference of the witness from its condition in May, that it could not have been in good condition in July.   The *onus* rested upon the plaintiffs to show that it was not at the time of delivery such cotton and in such condition as represented, and was not then ready to be delivered.   I think the plaintiffs are not entitled to recover anything for the alleged deficiency in this cotton, or for the charges for repacking the same.

Second, as to the federal tax thereon and paid by the plain-

tiffs.    It is conceded that the use of the term "Federal" in the contract is a mistake, but it is insisted that this tax was levied by the act of congress passed March 7th, 1864, and being a charge on the cotton at that time of sale, Rucker was bound to pay it.    But this cotton was within the confederate lines, and the collection of this tax could not be enforced.    It was a war measure, and its enforcement depended upon the success of the federal arms.    It did not attach until the cotton fell into the power of the federal government and that government was in a condition to enforce its laws.    I am, therefore, of opinion that the plaintiffs cannot maintain the claim for the federal tax paid, either on this cotton or on the Alabama cotton, which was in a like condition.

This brings us to the Selma cotton.    As we have said, 21 bales of this cotton were stored at Selma, 25 at Porks' Landing, and 24 at Donaghe's plantation.    The 21 bales at Selma were burnt by the federal troops in April, 1865.    It is claimed by the learned counsel for the appellee in his argument in this court, that because the other 49 bales were not delivered, that there could be no constructive delivery of these either, although stored at the place mentioned in the contract.    It is unnecessary to consider the nice questions presented as to this, and so ably argued by counsel, for it appears distinctly that it is not claimed by the plaintiffs in their bill of particulars.    It is true that in the special counts in the declaration the whole seventy bales are claimed, and a breach alleged for the non-delivery, but in the bill of particulars, to which in our practice we usually look for the exact nature of the demand, a claim for these 21 bales is expressly excluded.    Rucker went to trial not expecting a claim on that account, and for an appellate tribunal to consider it would be a surprise.    From an inspection of the record, it is apparent that the trial proceeded upon the theory that no claim was asserted on this account.    The bill for the

21 bales is not even in the record.   If it had been an issue *non constat*, but that Rucker might have shewn an actual delivery of these 21 bales.   I am therefore of opinion that no claim can now be asserted in this action for this cotton.

But 25 bales of the cotton represented in the contract to be in Selma were not stored there, but at Porks' Landing, a distance of 70 miles from Selma.   Was it a delivery of cotton sold and represented to be at Selma to find it 70 miles distant?   It is not pretended there was any actual delivery of this cotton.   It was only a constructive delivery.   The bills for the cotton were passed, and these, as well as the contract, represented them to be at Selma.   Selma was a cotton mart, and a party might well be willing to buy cotton at Selma, where he could daily take advantage of the rise in price in the markets of the world, and yet not be willing to buy cotton at an interior place and where it was not so readily saleable.   In addition to this, it would require expense and trouble to remove it to the place where it was represented to be.   It was argued, and evidence is sought to be introduced, to shew that it was safer at Porks' Landing than at Selma, but that is a question I do not think we can consider.   The plaintiffs bought cotton at Selma which was at Porks' Landing.   Was that a symbolic delivery, so as to pass the right of property and make its loss fall on the plaintiffs?   The bills passed the title to this cotton at Selma, but not at any other place.   If the plaintiffs had gone to Selma they would not have found the cotton.   Were they bound to go 70 miles and look after it, incurring expense and loss of time?   I think not.

But it is argued that the plaintiffs, in accepting the bills from Baker, Saler & Co. for the cotton at Porks' Landing and Donaghe's plantation waived the place in the original contract.   This would be true if the cotton had then been at these places.   It would have been an acceptance of this cot-

ton in lieu of what they had bought if Rucker could then have constructively delivered the cotton called for in the bills. But he could not, for the cotton was not then at these places, except the 12 bales recovered, if they be, in fact, a part of the cotton. But one of the chief elements of a symbolic delivery was then wanting—the existence of the cotton at the place called for, with the exception we have referred to.

It is argued, further, that the plaintiffs, in accepting an order of the military authorities for a part of the cotton at Porks' Landing, waived their right to exact a strict compliance of the contract from the defendant. I cannot see it in that light. They might have stood on their legal rights and done nothing. Instead of that, they tried to recover all they could. It is very questionable whether the twelve bales of cotton recovered was a part of the cotton sold by Rucker, but its recovery enured to Rucker's benefit. I think, therefore, that Rucker should be held responsible for the value of this cotton after deducting the quantity recovered under the order of the military authorities. As it required an expenditure of money to put the cotton recovered in proper condition, that is a proper charge against Rucker.

For the reasons given as to the cotton at Porks' Landing, I am also of opinion that the cotton at Donaghe's plantation was not delivered either ; that the right of property therein never passed to the plaintiffs, and that its loss must fall on Rucker.

But it is argued that the plaintiffs did not use due diligence ; that if they had gone to Selma in a reasonable time, they would have found that the cotton was not stored there, and could have had it removed or notified Rucker of its absence. I do not think this was required of them. They had their bills and they had a right to infer it was there. This is the usual way of dealing in such articles, and the purchaser may well await his pleasure to go and take actual possession.

The next question to be considered is the measure of damages. The general rule is the difference between the contract price and the price when the contract was broken. Shepherd v. Hampton, 3 Wheaton ; Enders v. Board of Public Works, 1 Gr. ; Sedgwick on Damages, 305. In Shepherd v. Hampton, Chief-Justice Marshall says "that I should not think that the rule would apply to a case where advances of money had been made by the purchaser upon the contract." This dictum of the Chief-Justice is adopted in New York (Clark v. Punig, 7 Cow.), but it is not now the established rule anywhere else in the United States or England, unless there be special damage. The rule is certainly established in Virginia as we have stated it since the decision of the court of appeals in Enders v. Board of Public Works, and seems to be well sustained both by reason and authority. See, also, Rese's ex'ors v. Bogmar, 46 Ala. 678 ; Hill v. Smith, 32 Vt. 432 ; Smith v. Dunlop, 12 Ill. 184. The breach of the contract was in July, 1864, when cotton was worth eighty cents in confederate money, and when confederate money was nine for one in gold. The account may then be stated as follows :

25 bales at Porks' Landing weighing 12,476
    pounds, less 12 bales weighing 6,146 pounds,
    received, balance, 6,330 pounds, at 8 8-9
    cents.................................$ 562 67
Paid for packing 12 bales received..........    180 00
24 bales at Donaghe's plantation, 13,332
    pounds, at 8 8-9 cents................. 1,185 08
                              $1,927 75

The only question remaining to be considered, is as to the proper judgment to be rendered by this court now. The statute (Code of Va., p. 750, § 34, amended by § 23 of the act of June 23, 1870) provides that if there is error in the judgment or decree sought to be reviewed, the appellate

court shall reverse the same and enter such judgment, decree or order as the court whose error is sought to be corrected ought to have entered. In this case the whole matter was before the circuit court, and the evidence is certified to this court. A motion was submitted for a new trial, but that motion was unnecessary. If it had been a verdict of a jury, and the circuit court had overruled the motion for a new trial, then all this court could have done was to reverse the court below and award a new trial. Here, however, the whole case is before us, and we must render such judgment as the circuit court ought to have rendered. I am therefore of opinion that the judgment of the circuit court of Lynchburg ought to be reversed, and a judgment rendered for $6,078.60, with interest thereon from the 1st day of July, 1865, and costs.

WINGFIELD, P., concurred with McLAUGHLIN, J.

BARTON, J., dissented. He considered the statement that the two parcels of cotton were at Selma, as merely an element of description looking to their identity, and not as a warranty of the place.

The representation was confessedly made in good faith and with every reason to believe it was true, and no injury happened to the appellants by reason of the mistake.

Judgment reversed.