(No. 14663.—Judgment affirmed.)

THE PENNSYLVANIA RE-TREADING TIRE COMPANY, Defendant in Error, *vs.* SOL H. GOLDBERG, Plaintiff in Error.

*Opinion filed October 21, 1922—Petition stricken December 6, 1922.*

CONTRACTS—*when contract to deliver stock in a proposed corporation acknowledges an indebtedness.* Where the purchaser, in consideration of the assignment to him of certain letters patent, pays a stipulated sum in cash and by written contract agrees to deliver to the assignor as much of the capital stock in a corporation which he agrees to organize as will at its market value amount to $120,000, reserving the right to pay $50,000 cash in lieu of such delivery, the promise to deliver the stock is an acknowledgment of an indebtedness for the balance of the consideration due, and failure to deliver the stock converts the obligation into one for the payment of the money.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding.

JUDAH, WILLARD, WOLF & REICHMANN, DONALD S. TRUMBULL, and ARTHUR M. COX, for plaintiff in error.

MILLS & HOWE, and GEORGE J. EDWARD, JR., for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff, the Pennsylvania Re-treading Tire Company, sued defendant, Sol H. Goldberg, in the municipal court of Chicago, to recover money claimed to be due plaintiff from defendant. There was judgment in that court for plaintiff for one cent, and it appealed to the Appellate Court. That court reversed the judgment of the municipal court and rendered judgment in favor of plaintiff, against defendant, for $56,132.09. On petition of defendant this court granted a writ of *certiorari,* and the cause is here for review.

The parties will be referred to as plaintiff and defendant.

The cause of action arose out of a transaction between the parties evidenced by an agreement in writing between them, May 12, 1919. The agreement recites the Whittier Company had on March 21, 1919, assigned and transferred to plaintiff the exclusive right to manufacture and sell the invention products and process covered by application for United States letters patent, serial No. 265839, filed December 9, 1918. In consideration of mutual covenants it was agreed that plaintiff assign and transfer to defendant all its rights obtained by the assignment of the Whittier Company. Defendant agreed to pay plaintiff $30,000 in cash, which was duly paid, and "third, the party of the first part [defendant] further agrees that within ninety (90) days after payment of said thirty thousand ($30,000) dollars he will organize a corporation and deliver to the party of the second part as much of the capital stock of said corporation as will amount, at the market price at date of delivery, to the sum of one hundred twenty thousand ($120,000) dollars; fourth, the party of the first part shall, however, have the right, at any time prior to delivery of the stock, to pay to the party of the second part the sum of fifty thousand ($50,000) dollars in lieu of delivery of said stock." Defendant never organized the corporation or paid the $50,000.

The decision of the case depends on the construction of the agreement. The cause was tried in the municipal court without a jury. At the conclusion of the evidence plaintiff moved the court to find it was entitled to recover $120,000, with interest from August 10, 1919, or if the court refused to so hold, that it hold plaintiff was entitled to recover $50,000, with interest. Defendant asked the court to hold there could be no recovery of any sum because the agreement was uncertain, indefinite and incomplete, or in the event the court denied the motion to find for defendant, that it hold plaintiff could not recover more than

nominal damages. The court denied plaintiff's request and held the second proposition of defendant,—that the plaintiff was only entitled to recover nominal damages. Judgment was therefore rendered for plaintiff for one cent.

Defendant's argument is based on a construction he gives the contract which we cannot agree to. He says in his brief that his "fundamental contention is that the contract is wholly lacking and insufficient in certain necessary terms and elements and is therefore unenforcible." In support of that statement the argument is that clause 3 of the contract is simply and solely an agreement to deliver stock; that it does not acknowledge an indebtedness by defendant or obligation to pay $120,000, and the failure to deliver the stock did not convert the undertaking in clause 3 into an obligation to pay the sum of money named; that the sum of $120,000 named was not used for any such purpose but merely as one of the elements to measure the amount or number of shares of stock defendant was to deliver. On that basis it is insisted the only recovery authorized is damage for non-delivery. The corporation never having been organized, no stock was ever issued and there is no basis for assessing the damage. Defendant eliminates clause 4 from any consideration in the construction of the contract by saying that clause was solely for the benefit of defendant by giving him the privilege of paying $50,000 in lieu of delivering the stock, but did not in any manner obligate him to pay $50,000 if he failed to deliver the stock. Defendant construes the agreement by the same rules applicable to the construction of an executory contract for the purchase of stock or other commodity where the consideration is not to be paid until delivery. There is no dispute that the consideration for the agreement of defendant was the assignment to him by plaintiff of the letters patent. We are unable to see how the contract, if it had no clause 4 in it, could be reasonably construed otherwise than as the acknowledgment by defendant of an indebtedness of $120,000,

which he was given the privilege of paying in stock of the corporation he agreed to organize, at its market price at the time it was to be paid. By the plain terms of the contract defendant agreed that in consideration of plaintiff assigning to him all its right, title and interest in the patent which it had obtained by the assignment of the owner, the Whittier Company, he would pay plaintiff $30,000 in cash and within ninety days after making the cash payment he would pay plaintiff the further sum of $120,000 in stock of a corporation he agreed to organize, by delivering to plaintiff such an amount of stock as would amount, at the market price at the date of delivery, to the sum of $120,000. If the sum mentioned was not the acknowledgment of an indebtedness in that amount we do not see why it was specifically mentioned and agreed to be paid in property at its market price on the date it was agreed to be paid. It was not an agreement to sell stock to be paid for by the purchaser at its market price on the date of delivery. The stock had already been paid for by the assignment of the patent. The contract was executed when the assignment was made by plaintiff and accepted by defendant. Nothing remained to be done except to pay the balance of the consideration. We see no difference in principle between this contract, construed without reference to clause 4, and the obligation of a debtor to pay a sum named by the delivery to the creditor, on a date specified, of grain, live stock or other commodity at the market price on the date of payment. Under such a contract the debtor is not bound to pay in the commodity if he chooses to pay the sum named in money, but the creditor is obliged to accept payment in money if the debtor does not choose to avail himself of the privilege of paying in property. Failure to pay in the commodity specified converts the obligation into one for the payment of money.

*Borah* v. *Curry*, 12 Ill. 66, was a suit on a note. By the terms of the note the maker agreed to pay the payee

$40 on or before a date named, "which may be discharged in good, sound corn at twenty cents per bushel." Both parties resided in the same county. The maker tendered the corn at his residence, but the payee insisted the corn was to be delivered at his residence and refused to accept it at the debtor's residence. Suit was brought on the note and the lower court gave judgment for defendant, which was reversed by this court. The court said the instrument was a note for the payment of $40, with a privilege to the maker to pay it in corn at a certain price, and the corn was required to be delivered to the payee at his residence. The court said the payment in corn was a privilege of the maker of the note, of which he was permitted to avail himself if he desired; that his creditor had no option but was obliged to accept the corn at the price agreed upon if tendered at his residence, even if its market price was then only ten cents per bushel.

*Smith* v. *Dunlap,* 12 Ill. 184, was an action on a note of Dunlap for $131,480.52, payable on a date specified in "State of Illinois indebtedness." It was not paid when it became due and suit was brought to recover. The court said the question raised was whether the instrument sued on was a note for the payment of the amount of money specified, which the maker might discharge on the day of its maturity by delivering to the payee an equal amount of the obligations of the State of Illinois, or whether it was a contract by which the maker assumed to pay that number of dollars of State indebtedness. The court construed it to be a contract to pay a given number of dollars of indebtedness of the State of Illinois; that the amount in dollars is expressed on the face of the instrument or evidence of indebtedness and can be ascertained at once by inspection; that where a promisor agrees to pay a certain number of dollars in bank notes or other evidences of indebtedness which purport to be and can be counted as dollars, the obligation is to pay the number of dollars named of the se-

curities described, and in default of payment the liability of the promisor is only for their real value, but where the undertaking is to pay a certain number of dollars in specific articles, the promisor must deliver the articles on the day named or he will be bound to pay the sum stated in money. The court held the instrument sued on being an agreement to pay a given number of dollars in obligations of the State, the measure of damages was the market value of said obligations on the day the instrument should have been paid.

In *Bilderback* v. *Burlingame*, 27 Ill. 338, the action was an acknowledgment of Bilderback in writing that there was due Goddard $450, "to be paid in lumber when called for,—in good lumber,—at one dollar and twenty-five cents." The promisor failed and refused to deliver the lumber. The court said, where an instrument admitted a sum of money to be due, which the promisor might pay in merchandise at a fixed price, if he failed to deliver the merchandise at the time specified he is obligated to pay in money.

The above and other cases, some of which we cite, state the principles applicable to this contract as we understand and construe it. *Childs* v. *Fischer*, 52 Ill. 205; *Barstow* v. *McLachlan*, 99 id. 641; *McKinnie* v. *Lane*, 230 id. 544; *Roberts* v. *Beaty*, 2 P. & W. (Pa.) 381; *State* v. *Worthington*, 7 Ohio, 171; *Irving* v. *Bond*, 76 Neb. 293.

The Appellate Court held clause 4 was an essential part of the contract and should be given some meaning and effect as to the rights of both parties; that if clause 3 were considered alone, in the light of the evidence the court would be inclined to hold it was an acknowledgment of a specific sum due, for which, upon defendant's failure to deliver the stock, he became liable in money, but the court held clause 4 modified clause 3, and construing the contract as a whole, plaintiff agreed if defendant did not wish to deliver the stock he should have the right to discharge the obligation incurred by the third clause by paying, before the time for delivery of the stock, $50,000 in money; and de-

fendant necessarily, as we construe the agreement, agreed that if he did not deliver the stock he would pay the $50,000. No cross-errors are assigned by defendant in error on the ruling of the Appellate Court in holding it was not entitled to judgment for $120,000, and it contends in this court that the judgment of the Appellate Court should be affirmed.

We have not referred to the authorities cited by defendant in his brief, for the reason they are not applicable if we have correctly construed the agreement. That defendant himself understood the contract to mean what we have construed it to mean, is, we think, shown by the evidence. The agreement was prepared by his attorney. The proof shows, and it is not disputed, that plaintiff fully performed everything it agreed to do. Defendant performed no part of the agreement except to pay the $30,000 cash. We are of opinion the inference warranted by the evidence is that the corporation defendant agreed to organize was for the manufacture of the invention mentioned in the agreement. Defendant denies that conclusion is warranted by the evidence, but if it is not, then we have a contract by which plaintiff agreed in one event to accept, in payment of the balance of the consideration for the assignment of the patent, stock in some kind of a corporation not specified, to be organized by defendant for some object or purpose not mentioned. In view of the fact that the Whittier Company originally owned the patent assigned by it to plaintiff and that defendant was practically the sole owner of the Whittier Company, it was the evident purpose and understanding of the parties that a corporation was to be organized for the purpose of manufacturing the invention. July 21, 1919, several days before payment of the balance of the consideration for the assignment was due, defendant put it out of his power to organize a corporation to manufacture the invention by assigning the letters patent to another corporation. Apparently plaintiff was not advised of this at the time. August 27, 1919, the defendant wrote the

president of plaintiff acknowledging receipt of a letter from him dated August 25. He stated that on account of uncertain conditions in the country there had been a forced delay in getting in operation, but it was expected something definite would be done in the near future and all arrangements with plaintiff would be fully carried out in accordance with the agreement. He asked plaintiff to exercise patience in getting the additional compensation as agreed upon, which he stated he was informed would be carried out to the letter. He stated it was only a matter of a short time until conditions throughout the country would right themselves, and assured plaintiff of honest intentions and that it would not be disappointed in the end. At that time defendant had already placed it out of his power to organize a corporation for the manufacture of the invention by assigning it, as we have stated, to another corporation. He finally failed and refused to organize a corporation and deliver the stock or to pay plaintiff any sum of money whatever as a balance of the consideration for the assignment.

We are disposed to agree with the Appellate Court as to plaintiff's right to recover and the amount for which it was entitled to judgment. The payment in stock to be made under the third clause, if it stood alone, was stock of a corporation defendant agreed to organize, which would amount, at the market price at the time of delivery, to the sum of $120,000. That seems to us as certain and definite as an agreement to deliver grain, cattle or other commodity at the market price to pay a fixed sum mentioned.

It is contended by defendant that if it had been intended he should pay the $120,000 in shares of stock which were worth at the market price at the time of delivery that sum of money, plaintiff would not have agreed to allow defendant to pay $50,000 in money in discharge of his obligation in lieu of delivering the stock. We do not know why the payment of that sum was agreed to in discharge of the obligation, but as we understand and read it, it was agreed to

by the plain terms of the contract. Whether it was wise or unwise on the part of plaintiff is not for a court to determine. Courts will not make contracts for parties but will only enforce contracts they themselves make. To give the instrument the construction contended for by the defendant would require holding that, other than that part of the agreement for payment of $30,000 cash, the contract was meaningless. Defendant received the entire consideration for which he agreed to make the payments specified, and we cannot hold he did not obligate himself to pay one or the other of the two sums named in the contract.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*

---

(No. 14690.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD ECCARIUS *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1922.*