## J. W. Snyder Company, Appellee, v. H. W. Sisson et al., Appellants.

### Gen. No. 28,563.

1. CONTRACTS—*sufficiency of variant tender to fix rights.* Under a contract for the construction of a building on the basis of cost plus 10%, such 10% to be paid in stock of the corporation to be organized to own and operate the building, the building when completed to be subject to a mortgage of $900,000, a tender of the number of shares of stock provided for in the contract was not a sufficient tender where the completed building carried a mortgage for $1,300,000.

2. CONTRACTS—*when payment in money required under contract providing optional payment in corporate stock.* Under a building contract in which, by a fair construction, defendant agreed to pay complainant 10% of the net cost of the building and defendant was given the option of making payment in stock of the corporation organized to operate the building, but failed and was unable to avail itself of such option because it incumbered the property for more than the stock contract provided for and because the law makes that part of the contract *ultra vires*, the payment must be made in money.

3. CONTRACTS—*failure to exercise option as to medium of payment as loss of option.* A provision in a cost-plus building contract that the contractor "will take" stock of the hotel corporation organized to operate the building in payment of its 10% profit amounted to an option on the part of such corporation to make the payment either in such stock or in money, and when it did not exercise such option its obligation was converted into one for the payment of money.

Appeal by defendants from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923,

J. W. Snyder Co. v. Sisson, 233 Ill. App. 248.

Affirmed.    Opinion filed June 11, 1924.    *Certiorari* denied by Supreme Court (making opinion final).

GOTTLIEB, SCHWARTZ & MARKHEIM, for appellants; HARRY MARKHEIM, of counsel.

No appearance for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the defendants seek to reverse a decree of the superior court of Cook county awarding complainant a mechanics' lien, on certain premises in Chicago, in the sum of $20,981.00.

The record discloses that complainant is a corporation engaged in constructing buildings in Chicago; that on February 6, 1917, the defendant H. W. Sisson was the owner of certain real estate located at 53rd street and Lake Michigan, Chicago, and on that date he entered into a written contract, whereby the complainant was to construct for Sisson an eleven-story apartment hotel on the premises, and in consideration of complainant furnishing all labor and material, the defendant Sisson agreed to pay the net cost thereof, plus 10 per cent, which was for complainant's profit, provided that the entire cost did not exceed $210,230.00. Complainant proceeded with the work and completed the building, and no complaint is made that he has not complied with all the terms of the contract in this respect.   The defendant has paid the net cost of all labor and material, but has paid no part of the 10 per cent profit which complainant was to receive. The defendant takes the position that this 10 per cent was not to be paid in money but was to be paid to the complainant by turning over to it stock in the Sisson Company, a corporation, which was organized after the contract in question was made and to which company the hotel in question was conveyed.   The stock in such corporation was not given to complainant in

payment of his profit for the reason, among others, that under the law complainant corporation could not take and hold stock in another corporation. The defendant hotel company does not say that it is willing to pay the complainant whatever sum is justly due and owing to it, but merely says that complainant cannot recover in the instant case.

The cause was referred to a master who took the proof and made up his report, recommending that the bill be dismissed because complainant was not entitled to be paid in money but only in the stock of the hotel company. The Chancellor sustained exceptions to the report and entered a decree finding that the 10 per cent which was due the complainant amounted to $17,432.19 on which sum complainant was allowed interest at 5 per cent from the time complainant was entitled to be paid until the entering of the decree, being the aggregate sum of $20,981.00, and it was decreed that unless this sum, together with certain costs, was paid the property be sold.

There is no dispute as to the facts in the case so that the decision must turn upon the construction of the contract entered into between the parties for the construction of the hotel building. The contract consists of two documents both executed on February 6, 1917. The first is apparently the ordinary form of printed contract for the construction of a building. It provided that the complainant was to furnish all labor and material in the construction of the hotel for which it was to be paid the net cost of all labor and material, together with 10 per cent thereof for its profit, provided the entire cost did not exceed $210,-230.00; that payments should be made from time to time upon architect's certificates and in reference to the 10 per cent profit it was provided: "the 10% profit referred to herein is to be reserved by the owner until the completion of this entire contract and acceptance of the work according to the terms of this contract, and upon the completion of said payments by said

owner as herein provided, said contractor is to accept stock in the Sisson Company in full of said 10% profit in accordance with separate agreement of even date hereof.'' The ''separate agreement'' was the second document or part of the contract which was written in the form of a letter by the complainant to the defendant Sisson and accepted by the latter. After referring to the contract, it provided, ''It is hereby further understood and agreed that we will take for our profit 7% cumulative preferred stock and in addition to this an amount of common stock equal to ½ the amount of said preferred stock of the Sisson Company, a corporation to be organized under the laws of the State of Illinois to take over the land and said building, the said preferred and common stock to be issued and delivered to us upon the completion of said building. The total amount of said preferred stock to be issued by said Sisson Company shall not exceed $400,000.'' There was a further provision to the effect that the hotel when completed was to be subject to a first mortgage of approximately $900,-000.00, and that ''It is further agreed that you can purchase our said preferred stock upon completion of said building at 90¢ on the dollar, face value, * * * and accrued interest on the stock in our possession. In case you do so purchase the said preferred stock, or we dispose of said preferred stock within one year from the completion of said building the common stock is to be returned to you without consideration.'' The net cost of the building was less than the maximum provided for in the contract, but when the building was completed, it was subject to a first mortgage of $1,300,000.00, being nearly $400,000.00 more than was provided for in the contract.

Both parties agreed that the provision of the contract providing that the hotel company should deliver to the complainant for its 10 per cent profit stock of the hotel company, is *ultra vires* and void. The defendant states it tendered to the complainant the stock

as provided for in the contract. This is not borne out by the record, because it is clear that if the hotel company tendered to the complainant the number of shares of stock called for by the contract, they would not be equivalent to the shares called for by the contract because the hotel company property was incumbered by approximately $400,000 more than the contract provided.

We think that by a fair construction of the contract, the defendant agreed to pay complainant 10 per cent of the net cost of the building; that the defendant was given the option to make this payment in stock of the hotel company, and that since the defendant failed and was unable to avail itself of this opinion on account of its incumbering the property for about $400,000.00 more than the contract provided it should be incumbered, and on account of the law making that part of the contract *ultra vires*, it must pay complainant in money. *Pennsylvania Re-Treading Tire Co. v. Goldberg*, 305 Ill. 54; Vol. 2, Mechem on Sales (1901) Secs. 1439-1442; *Corcoran v. Lehigh and Franklin Coal Co.*, 138 Ill. 390; *Hitchcock v. Galveston*, 96 U. S. 341; *Mead v. Chicago & Northwestern Ry. Co.*, 189 Ill. App. 323; *Barstow et al. v. McLachlan et al.*, 99 Ill. 641; *McKinnie v. Lane*, 230 Ill. 544; *Brooks v. Hubbard*, 3 Conn. 58; *Pinney v. Gleason*, 5 Wend. (N. Y.) 393; *Heywood v. Heywood*, 42 Me. 229; Vol. 3, Parsons on Contract, Sec. 215; *Cleveland and Pitts. R. Co. v. Kelley et al.*, 5 Ohio St. 180; *Trowbridge v. Holcomb et al.*, 4 Ohio St. 38.

In the *Goldberg* case there was an assignment of letters patent to Goldberg in consideration for which he agreed to pay $30,000.00 in cash, and by clause 3 of the contract he further agreed that within ninety days thereafter he would organize a corporation and deliver to plaintiff as part of the consideration for the assignment, stock of the corporation amounting to $120,000.00. And by clause 4 of the agreement, it was provided that Goldberg might at any time prior to the

delivery by him of this stock, pay in lieu thereof $50,000.00 in cash. He never organized the corporation, nor paid the $50,000.00 and suit was brought to recover the balance of the consideration. The court held, in substance, that on account of Goldberg's failure to deliver the stock or the $50,000.00, he was liable for the $120,000.00 in money. And on pages 56 and 57 it is said: ''Defendant's argument is based on a construction he gives the contract which we cannot agree to. He says in his brief that his 'fundamental contention is that the contract is wholly lacking and insufficient in certain necessary terms and elements and is therefore unenforcible.' In support of that statement the argument is that clause 3 of the contract is simply and solely an agreement to deliver stock; that it does not acknowledge an indebtedness by defendant or obligation to pay $120,000.00, and the failure to deliver the stock did not convert the undertaking in clause 3 into an obligation to pay the sum of money named; that the sum of $120,000.00 named was not used for any such purpose but merely as one of the elements to measure the amount or number of shares of stock defendant was to deliver. On that basis it is insisted the only recovery authorized is damage for nondelivery. The corporation never having been organized, no stock was ever issued and there is no basis for assessing the damage  *  *  *. He was given the privilege of paying in stock of the corporation he agreed to organize, at the market price at the time it was to be paid.'' And in considering the contract further, the court said: ''It was not an agreement to sell stock to be paid for by the purchaser, at its market price on the date of delivery. The stock had already been paid for by the assignment of the patent. *  *  * We see no difference in principle between this contract, construed without reference to clause 4, and the obligation of a debtor to pay a sum named by the delivery to the creditor, on a date specified, of grain, live stock or other commodity at the market

price on the date of payment. Under such a contract the debtor is not bound to pay in the commodity if he chooses to pay the sum named in money, but the creditor is obliged to accept payment in money if the debtor does not choose to avail himself of the privilege of paying in property. Failure to pay in the commodity specified converts the obligation into one for the payment of money." The court then considers the case of *Smith v. Dunlap,* 12 Ill. 184 which is one of the authorities chiefly relied upon by the defendant and points out that in that case a note was to be paid in "State of Illinois indebtedness" and that the question there was whether the amount should be paid in money or by delivering an equal amount of obligations of the state, and that it was held that the note was to be paid in a given number of dollars of the state's indebtedness. In considering that case further, the court said (p. 59): "but where the undertaking is to pay a certain number of dollars in specific articles, the promisor must deliver the articles on the day named or he will be bound to pay the sum stated in money."

It will be noted that in the *Goldberg* case, the court said that since the purchaser of the letters patent had not formed the corporation he agreed to, there was no basis for assessing the damage. So also in the instant case, the corporation not having been formed as the defendant agreed—the incumbrance on the property being $400,000.00 more than the contract provided for—"there is no basis for assessing the damage." The provision of the contract in question was that complainant "will take" stock of the hotel corporation in payment of his 10 per cent profit, but there is no provision that the hotel company was obligated to deliver this stock in payment to the complainant. It was optional with the hotel company and not having exercised its option, its obligation is converted into one for the payment of money. As was said in the *Goldberg* case, "Failure to pay in the com-

modity specified, converts the obligation into one for the payment of money.''

Mechem in his work on Sales (Vol. 2, secs. 1439-1442) says that contracts for the payment of a certain number of dollars by the delivery of goods are usually one of the three kinds: 1. Contracts to pay a given sum in goods at a fixed rate. 2. Contracts to pay a given sum in goods, no rate being fixed. 3. Contracts to pay the given sum or to furnish designated goods. In Sec. 1441, in speaking of the first kind of contracts, the author says that there is some diversity of holding whether the contract calls for the delivery of goods in any event or whether in case of failure to deliver goods, the amount is to be paid in money, and says that the weight of authority sustains the latter view, i. e., that the contract should be construed as giving the payor the option of delivering the goods but if this is not done he must pay the sum mentioned in money.

Counsel for defendants have cited a number of authorities tending to support their contention, viz that there was no obligation upon them to pay in money, but that they were only required to deliver the stock and, therefore, the instant case will not lie.

It is true that the authorities are not entirely harmonious, but upon a careful examination of them, it will be found that under the contract involved in the several cases, the defendants were obligated to deliver the specific property mentioned in the several contracts and counsel for defendants' argument is to the effect that the contract in the instant case obligates the defendants to deliver the stock of the hotel company. With this argument we are unable to agree, because as stated, we think a proper interpretation of the contract is that if the defendants tendered the stock to the complainant, it would be obliged to take it, but that they were not compelled to do so. They could discharge their obligation by paying in

money.   The provision of the contract was that the defendants might have the option of either tendering the stock or paying in money and not having exercised their option, they are obligated to pay the defendant in money.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

TAYLOR, P. J. and THOMSON, J. concur.