Danville Brick Company, Plaintiff in Error, v. O. K. Yeager, Defendant in Error.

Gen. No. 8,643.

Opinion filed May 8, 1933.

CHARLES TROUP, for plaintiff in error.

R. R. BOOKWALTER and GUNN, PENWELL & LINDLEY, for defendant in error.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This cause is brought to this court on a writ of error to reverse a judgment of the Vermilion county circuit court, entered upon a general demurrer to plaintiff in error's declaration.

Plaintiff in error sought to recover a balance claimed to be due upon a contract for brick, as follows:

"June 21, 1926.
"The Danville Brick Company,
"Big 4 and Prospect Ave.,
"Danville, Illinois.
    "Re: Wolford Hotel, Danville, Ill.
"Gentlemen:
    "Chas. Benson, Inc. has advised us of the selection of your Patrician face brick for use on the Wolford Hotel, and of light commons for back up brick.

"We herewith place order for the approximate following quantities; 330 M. Patricians and 11 M light commons, on the following terms: Patrician face brick, $16.00 per M delivered at the building as needed, of a blend of approximately the following percentages of shades: 30% No. 212, 15% No. 215; 10% No. 260, 25% No. 275, and 20% No. 280. For the Patrician brick used on the two street elevations and the returns (approximately 220 M) the payment is to be $8.00 per M. brick in cash and $8.00 per M. in common stock of the Danville Hotel Company. For the Patrician brick used in the courts (approximately 110 M), the payment is to be $5.50 per M. in cash and $10.50 per M. in common stock of the Danville Hotel Company.

"Common brick for back up will be $10.00 per M delivered at the building as needed, for which payment of $5.00 per M is to be made in cash, and $5.00 per M in common stock of the Danville Hotel Company.

"Very truly yours,
"Yeager & Sons,
"oky*s                    "by O. K. Yeager."

The plaintiff in error adopted two theories in the two counts filed. The first count adopted the theory that inasmuch as an invoice accompanied each delivery of brick specifying that the price was due in 30 days, that this invoice became a part of the contract and therefore required the money and stock payable within 30 days after delivery. This count, however, failed to allege that defendant in error, Yeager, accepted this variation of the contract.

The theory adopted by plaintiff in error in the second count was that the cash and stock became due a reasonable time after delivery of the brick.

However, in both counts, the theory of the plaintiff in error was that because the defendant in error failed to deliver or tender the stock an obligation arose to pay the amount of money represented by the face or

the par value of the stock. The demurrer to the declaration therefore squarely raised one proposition, namely: If the plaintiff in error sold the defendant in error $3,773 worth of brick and agreed to accept stock in the Danville Hotel Company of the par value of $3,773, would defendant, in case of the failure to deliver the stock, become liable for $3,773, or would he be liable only for the value of the stock at the time he should have delivered it?

The circuit court decided that the declaration must be predicated upon and contain allegations based upon the proposition that the plaintiff was entitled to recover only the value of the stock at the time it should have been delivered and from that determination this writ of error is prosecuted.

Apparently, all cash payments agreed to have been made have been paid. The agreement is "to make payment in the common stock" of The Danville Hotel Company. No value to said stock is alleged. It is to be noted that this payment is not optional to be paid in either stock or money, but is payable in stock only.

In *Smith v. Dunlap*, 12 Ill. 184, the contract was a note "for the payment to the bank of Illinois for the sum of $131,480.52, in State of Illinois indebtedness," which matured and became due on the 20th day of April, 1843. The court held: "Is it a note for the payment of $131,480.52, which the maker may discharge on the day it matures, by an equal amount of the obligations of the state of Illinois? Or, is it a contract, by which he only assumes to pay that number of dollars of state indebtedness? If the former, it is the privilege of the debtor to make payment on the day named, in the indebtedness of the state, but, if he fails thus to discharge the obligation, he is bound to pay the sum specified in specie; if the latter, he is, in any event, only liable for the actual value of the indebtedness agreed to be paid. There is a wide difference between

the two classes of contracts. Where the promisor undertakes to pay a certain number of dollars in specific articles, such as grain, cattle, or other commodities, he must deliver the property on the day named in the contract, or he becomes absolutely bound to pay the sum stated in money. The sum expressed in the obligation indicates the true amount of the debt; and the other provision is inserted for the benefit of the debtor, and relates exclusively to the mode of payment. If he does not avail himself of the privilege of discharging the debt in property, the obligation becomes a naked promise to pay the amount in money. But where the promisor agrees to pay a certain sum in bank notes, or other evidences of indebtedness, which purport on their face to represent dollars, and can be counted as such, the sum is expressed to indicate the number of dollars of the notes or evidences to be paid, and not the amount of the debt or consideration. The obligation is in fact but a promise to deliver so many dollars, numerically, of the securities described. If the debtor fails to deliver them according to the terms of the contract, he is responsible only for their real, not their nominal value. Their cash value is the true amount of the debt to be discharged. And beyond the damages directly resulting from the breach of the contract, the creditor is not entitled to recover.''

From this rule our courts have never swerved. The same rule is laid down in *McCumber v. Gilman*, 13 Ill. 542, and in *Pennsylvania Tire Co. v. Goldberg*, 305 Ill. 54, the court adhered to the rule and said:

''*Smith v. Dunlap*, 12 Ill. 184, was an action on a note of Dunlap for $131,480.52, payable on a date specified in 'State of Illinois indebtedness.' It was not paid when it became due and suit was brought to recover. The court said the question raised was whether the instrument sued on was a note for the payment of

the amount of money specified, which the maker might discharge on the day of its maturity by delivering to the payee an equal amount of the obligations of the State of Illinois, or whether it was a contract by which the maker assumed to pay that number of dollars of State indebtedness. The court construed it to be a contract to pay a given number of dollars of indebtedness of the State of Illinois; that the amount in dollars is expressed on the face of the instrument or evidence of indebtedness and can be ascertained at once by inspection; that where a promisor agrees to pay a certain number of dollars in bank notes or other evidences of indebtedness which purport to be and can be counted as dollars, the obligation is to pay the number of dollars named of the securities described, and in default of payment the liability of the promisor is only for their real value, but where the undertaking is to pay a certain number of dollars in specific articles, the promisor must deliver the articles on the day named or he will be bound to pay the sum stated in money. The court held the instrument sued on being an agreement to pay a given number of dollars in obligations of the State, the measure of damages was the market value of said obligations on the day the instrument should have been paid."

In *Warnock v. Fleming,* 200 Ill. App. 22, 24, the court, speaking by Mr. Justice McSurely, held:

"It is established by many decisions that when suit is brought upon a check or other obligation payable in a foreign or depreciated currency, the measure of damages is the value of such foreign or depreciated currency at the time such check or other obligation should have been paid, with interest to the time of judgment. Among the many cases so holding are the earlier cases in this State of *Smith v. Dunlap,* 12 Ill. 184; *McCumber v. Gilman,* 13 Ill. 543; and *County of Madison v. Bartlett,* 1 Ill. 67, which have never been overruled. Other decisions are *Grunwald v. Freese,* 34 Pac. 73

(Cal.); *Butler v. Merchant* (Tex. Civ. App.), 27 S. W. 193; *Stewart v. Salaman*, 94 U. S. 434; and *Matthews v. Rucker*, 41 Tex. 636. See also, long list of cases to the same effect in 30 Cyc., p. 1217 and 8 Cyc., p. 328. We are not persuaded by the argument of counsel for defendant to depart from the rule announced in these cases.''

It would be a waste of time to consider the contract in question in a variety of language, which it does not express, or to interject optional clauses which are found in other cases but which are not found in this contract.

The judgment of the circuit court of Vermilion county is affirmed.

*Affirmed.*